THE ATTORNEY GENERAL EX REL. ASKEW, Appellant, vs.
SMITH and others, Respondents.

*February 27 — March 19, 1901.*

*Waters: Lakes: Purpresture: Removal at suit of attorney general: Nuisance: Riparian rights: Railroads: Conveyance of land in fee: Ultra vires.*

1. A structure built upon the bed of a lake, not in aid of navigation, such as a building in which to store and repair boats, is a purpresture.

2. A pier may lawfully be built by a riparian owner in aid of navigation, through shoal water to navigable water; but if built by one not a riparian owner it is a purpresture.

3. Where the owner of a lot bordering on a lake conveys the lake end thereof, including the shore, to a railway company in fee simple, he ceases to be a riparian owner. Even if the company has no power to acquire a fee in its right of way, but only an easement, yet the conveyance of the fee to it transfers the title and is valid until assailed in a direct proceeding by the government.

4. A mere purpresture is liable to abatement in a suit in equity by the attorney general, though it is not a public nuisance.

5. In an action to compel the removal of a boat house and pier in a lake, the attorney general filed a complaint which sought enforcement of the rights of the state and the private rights of the relator, an alleged riparian owner, as well. The proofs showed that the structures were purprestures though not a public nuisance, but showed that the relator was not a riparian owner and suffered no private injury. The attorney general did not appear in court on the trial, but made no attempt to withdraw the complaint or discontinue the action. *Held,* that judgment requiring the removal of the purpestures should have been rendered.

APPEAL from a judgment of the circuit court for Dane county: GEO. CLEMENTSON, Judge. *Reversed.*

This is an action in equity brought by the attorney general of the state, in his official capacity, upon the relation of a private citizen, to abate and remove certain structures erected in the waters of Lake Monona, at the foot of Henry street, in the city of Madison. The structures complained

The Attorney General ex rel. Askew vs. Smith and others.

of are alleged to be purprestures and public nuisances, as well as invasions of the riparian rights of the relator as owner of part of lot 1, block 70, in the city of Madison.

In the above map the premises occupied by the relator are four rods square, and marked "Askew." The relator claims, however, to own to the original shore of the lake, by reason of facts hereafter to be stated. Between the lines of her occupation and the shore of the lake as it existed prior to 1868 there was a distance of about fifteen feet, such shore being nearly at right angles with the lot lines. At some time prior to October, 1868, the Chicago, Milwaukee & St. Paul Railway Company built a railway track on said shore line, the center line of said track being practically on said original shore line. Said track is marked "C., M., St. P.

Track No. 1," on the map. Said company afterwards filled in dirt, and built another track, marked "No. 2" upon the map, and at a still later period made a contract with the Chicago & Northwestern Railway Company under which said last-named company was allowed to, and did, make a further filling, and constructed two tracks still further out in the original bed of the lake, which tracks are marked "C. & N. W. Tracks, Nos. 1 and 2," upon the map; and outside of the last track was constructed a retaining wall. The structures complained of in this action consist of a pier and a boat house for storage and repair of boats outside of this retaining wall, and standing in shallow water upon the bottom of the lake, and have been used by George W. Smith, the original defendant, and since his death by his heirs, the present defendants, for carrying on the business of a boat livery. Said structures stand in shallow water, from two feet to two feet and a half in depth.

The facts of the case were not greatly in dispute, and the court found the same, in substance, as follows:

Block 70 was platted by the proprietors of the land as a part of Madison in 1837, and lot 1 of said block (being the lot delineated upon the map) had a length of about 280 feet, extending from Wilson street, on the northwest, to Lake Monona, on the southeast. One Dean became the owner of said lot 1 in 1852, and prior to October, 1868, the Milwaukee & St. Paul Railway Company constructed a single-track railroad across the lot at its lake end; the center line thereof being the shore line of the lot. October 29, 1868, Dean and wife executed a deed in fee simple to said railroad company, conveying to it and its successors and assigns, forever, a piece of land from the lake end of said lot, described as follows: "A strip or piece of land forty-eight feet wide, extending across lot 1, block 70, in the city of Madison, through which strip or piece of land the line of the railroad of said company is now located, so as to leave fifteen feet in width on the inside (in shore) from the cen-

ter, and thirty-three feet in width of said strip on the outside of said center line (lake side)." This deed conveyed to the railway company fifteen feet of said lot next to the lake, and purported to convey thirty-three feet of the lake adjoining said fifteen-foot strip. Prior to 1883 the name of the Milwaukee & St. Paul Railway Company was changed to the Chicago, Milwaukee & St. Paul Railway Company; and since the time of the execution of the said deed from Dean said company has continuously occupied and used said land, from a certain retaining wall built by it about eight feet northwest of the center line of its track, for a roadbed, and has always occupied contiguous land made by filling in the bed of the lake.

On July 26, 1869, Dean and wife conveyed to one Nietert the following land: "Four rods square off from the southeast end of lot 1, block 70, city of Madison." October 23, 1873, Nietert and wife conveyed the same property to the relator by the same description. Nietert, after receiving his deed, went into possession of the piece of land four rods square adjoining on the northwest the strip of land deeded to the railway company, and marked "Askew" on the map, and built a dwelling thereon, which was his homestead, and has been the homestead of the relator since she purchased it; but neither Nietert nor the relator ever had possession of that part of lot 1 now occupied by the railway company.

On September 20, 1873, Dean and wife delivered to Bridget Minehan a deed of the following land: "All of the southeast one-half of lot 1, block 70, excepting forty-eight feet from the southeast end of said lot sold to the M. & St. P. R. R. Co., and another piece off the same end, four rods square, lying next to the railway track aforesaid, sold to Nietert." On the 18th of May, 1874, the administrator of the estate of Bridget Minehan, deceased, conveyed the last-named tract of land to George W. Smith, who went into possession thereof, built his homestead there, and occupied the same

until his death, in September, 1899, since which time it has been occupied by his widow. George W. Smith died intestate, and the present defendants are his heirs.

Shortly after Smith purchased said property he built a small pier in the lake at the edge of the railroad embankment as it then existed, and commenced the business of boat livery, which increased until it brought him an income of about $600 per year; and the present defendants have continued that business since his death, the boat house being enlarged as the business increased. Prior to 1883 the Chicago, Milwaukee & St. Paul Railway Company constructed a second track outside of its first track; and in 1883 the same company conveyed to the Chicago & Northwestern Railway Company the right to operate its then existing track along the shore of said lake, and construct another track on the lake side thereof, which said last-named company did in 1898, and extended its roadbed towards the lake by filling in the lake. During the year 1898 and since that time there have been four railroad tracks in operation; the three outside tracks at the place in question being over what was originally the bed of the lake; the width of the made land from the original shore line being fifty-one feet.

When the Chicago & Northwestern Railway Company was about to lay its second track, it was arranged between the said company and Smith that the company should move his boat house, platform, etc., out into the lake, outside of its retaining wall, which the company in fact did. Said boat house is now four feet from said retaining wall. The width of the boat house is eighteen feet, and its length sixty feet. On the lakeside is a platform for landing, and at Henry street is a pier extending sixty-eight feet into the lake, five feet in width for a part of the way, and three feet for the remainder. The boat house is used for storing boats and repairing them. The side of the boat house next the shore is supported by stones, and the other parts of the boat

house and the pier have piles driven into the ground.  The water of the lake where the boat house stands is shallow, and only navigable by rowboats; the depth at the outer edge of the platform being two feet, and at the end of the pier, two feet six inches.  Neither the boat house nor the pier or platform has obstructed navigation, nor have they inconvenienced the public in any way.  The public have always used the pier, with the consent of the owners, without charge; hence the court found that said structures were not public nuisances.

From these facts the court concluded: That the title of Dean to lot 1 extended only to the edge of the water, the land under the water being the property of the state, held in trust for the public.  The deed from Dean to the railway company vested in that company absolute title to the land described in the deed, except the part covered by the waters of the lake.  The deed from Dean to Nietert conveyed the piece of land four rods square next to the piece sold to the railway company, marked "Askew" upon the map.  Neither Nietert nor the relator ever had title to the shore of lot 1, and they never had any riparian rights, and as to the relator the defendant's structures are not a private nuisance.  That the structures of the defendants constituted an unauthorized occupation of state land, but did not constitute a public nuisance, and it would serve no good purpose to the public, and would be a grievous injury to the defendants, to abate the same.  That the attorney general, though a party to the action, has taken no part therein, and has not asked, on behalf of the state, that the court abate said structures, and has expressly declined to make such request, and the court therefore declines to render such judgment.

Upon these findings, judgment was rendered dismissing the complaint on the merits as to the relator, with costs, and as to the attorney general without prejudice and without costs, from which judgment the attorney general appeals.

The Attorney General ex rel. Askew vs. Smith and others.

For the appellant there was a brief signed by the *Attorney General* and by *Sanborn, Luse, Powell & Ellis*, attorneys for the relator, and oral argument by *A. L. Sanborn* and *F. C. Ellis.* They argued, among other things, that the boat house was a public nuisance and should be abated. *Larson v. Furlong*, 63 Wis. 323; *Hart v. Albany*, 9 Wend. 571; *Penniman v. N. Y. B. Co.* 13 How. Pr. 40; *Hecker v. N. Y. B. D. Co.* 13 How. Pr. 549; *Moore v. Jackson*, 2 Abb. N. C. 211; *Enos v. Hamilton*, 27 Wis. 256; *People v. Cunningham*, 1 Denio, 524, 530; *Att'y Gen. v. Terry*, L. R. 9 Ch. App. 428; *Blanchard v. W. U. Tel. Co.* 60 N. Y. 514; *Knickerbocker I. Co. v. Shultz*, 116 N. Y. 382, 389; *People v. Vanderbilt*, 26 N. Y. 293; 1 Wood, Nuisances, 655, 656; *Ill. River P. Co. v. Peoria B. Asso.* 38 Ill. 467; *Diedrich v. N. W. U. R. Co.* 42 Wis. 248, 262; *Atlee v. Packet Co.* 21 Wall. 389; *King v. Russell*, 6 East, 427; *King v. Cross*, 3 Campb. 224; *King v. Jones*, 3 Campb. 229; *Coburn v. Ames*, 52 Cal. 385; *Orton v. Harvey*, 23 Wis. 99; *Hundhausen v. Bond*, 36 Wis. 29; *Corning v. Lowerre*, 6 Johns. Ch. 439; *U. S. v. Brighton R. Co.* 25 Fed. Rep. 465; *Revell v. People*, 177 Ill. 468; *Gold v. Carter*, 9 Humph. 369; *Rex v. Ward*, 4 A'dol. & El. 384; *People v. St. Louis*, 10 Ill. 351; *Cohn v. Wausau B. Co.* 47 Wis. 314; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Priewe v. Wis. S. L. & I. Co.* 93 Wis. 534; *State v. Kean*, 48 L. R. A. 102; *Knowlton v. Williams*, 47 L. R. A. 314; *Comm. ex rel. Hensel v. Y. M. C. A.* 169 Pa. St. 24. The pier and platform are unauthorized and should be abated. *Larson v. Furlong*, 63 Wis. 323; *People v. Vanderbilt*, 26 N. Y. 287; *People v. New York & S. I. F. Co.* 68 N. Y. 71; *People v. New York & S. I. F. Co.* 7 Hun, 105, 109; *Rex v. Ward*, 4 Adol. & El. 384; *Ill. Cent. R. Co. v. Chicago*, 173 Ill. 471; *Ill. Cent. R. Co. v. Chicago*, 176 U. S. 646; *Matter of Staten Island R. T. Co.* 103 N. Y. 251; *Kerr v. West Shore R. Co.* 127 N. Y. 269; *State v. Carpenter*, 68 Wis. 165; *Att'y Gen. v. D. & B. B. R. Co.* 27 N. J. Eq. 1.

The Attorney General ex rel. Askew vs. Smith and others.

The action of the court does not depend upon the discretionary authority of the attorney general or any other officer. *State ex rel. Lamb v. Cunningham*, 83 Wis. 90; *Ex parte Parker*, 131 U. S. 221; *Central T. Co. v. St. L., A. & T. R. Co.* 40 Fed. Rep. 426; *Revell v. People*, 177 Ill. 468; Gould, Waters, § 168; *Jones v. Pettibone*, 2 Wis. 308; *Railroad Co. v. Schurmeir*, 7 Wall. 272, 286; *Ill. Cent. R. Co. v. Illinois*, 146 U. S. 387; *Barney v. Keokuk*, 94 U. S. 324, 333; *Wis. River I. Co. v. Lyons*, 30 Wis. 61, 64; *Wright v. Day*, 33 Wis. 260; *Norcross v. Griffiths*, 65 Wis. 599; *Willow River Club v. Wade*, 100 Wis. 86; *Kenyon v. Knipe*, 46 Fed. Rep. 309.

*Rufus B. Smith*, for the respondents, contended, *inter alia*, that the railway company being the riparian proprietor before the filling, it continued to be such proprietor after the filling, and the filling simply made a new shore line for its land. *Cleveland v. C., C., C. & St. L. R. Co.* 93 Fed. Rep. 113–137; *Hanford v. St. P. & D. R. Co.* 43 Minn. 104. The respondents have done what they have by the express license of the riparian proprietor, and have done nothing but what a riparian proprietor may do or may authorize another to do. *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Diedrich v. N. W. U. R. Co.* 42 Wis. 248; *Delaware & H. C. Co. v. Lawrence*, 2 Hun, 163.

WINSLOW, J. Lake Monona is a meandered lake, navigable in fact. The title to its bed is in the state in trust for legitimate public uses, such as fishing, navigation, and the like; and the state cannot convey it away for private uses, nor can it abdicate the trust. *McLennan v. Prentice*, 85 Wis. 427; *Priewe v. Wis. State L. & I. Co.* 93 Wis. 534; *Mendota Club v. Anderson*, 101 Wis. 479; *Pewaukee v. Savoy*, 103 Wis. 271; Stats. 1898, sec. 1607*a*. A structure built upon the bed of the lake, not in aid of navigation (e. g. a building in which to store and repair boats), is a purpres-

ture,— an invasion both of the state's title and the rights of the public. A pier may lawfully be built by a riparian owner in aid of navigation, through shoal water to navigable water, if not prohibited by state law; but, if built by one not a riparian owner, it is an unauthorized structure, and an invasion of the rights of the state and the public, because the right to erect such a pier is simply an incident of riparian ownership. *Larson v. Furlong,* 63 Wis. 323; *Cohn v. Wausau B. Co.* 47 Wis. 314. Applying these legal principles to the facts as found by the trial court (which are amply supported by the evidence), it is entirely clear that the boat house was and is a purpresture, because it is not an aid to navigation, and that the pier is a purpresture, because those who built and maintain it are not riparian owners; and these were the conclusions reached by the trial court.

The trial court further held, however, that the relator was not a riparian owner; that the structures were not shown to be actually obstructions to navigation, or nuisances in fact, but, rather, conveniences to the public; and that the attorney general having taken no active part in the litigation, and declining to come into court and ask judgment of abatement on behalf of the state, the court, sitting as a court of equity, would not abate the structures.

With the first proposition, namely, that the relator is not a riparian owner, we entirely agree. The deed made by Dean to the railway company in 1868 was a deed conveying in fee simple the southeast end of the lot, and covered the shore line; the railway company had power by its articles of association, "to acquire, use, and sell, bargain, lease, and convey, all kinds of property, real and personal, necessary or convenient to operate, use, or maintain its railroad." But the appellant's contention is that the railway company could only acquire an easement or limited fee in lands to be used for right-of-way purposes, and that hence, notwithstanding the language of the deed, it must be construed as simply

conveying such easement, and that the relator, having by subsequent deed acquired the southeast end of the lot, owns the shore and all riparian rights, subject only to the easement of the railway company. *New York Central & H. R. R. Co. v. Aldridge*, 135 N. Y. 83; *S. C.* 17 L. R. A. 516. It was held by this court nearly twenty years ago, in the case of *Messer v. Oestreich*, 52 Wis. 684, that, when a railway company received a warranty deed of a strip of land for its track, the company did not take a mere easement, but a title in fee, subject at most to forfeiture for nonuser or misuser. If it be granted that the railway company had no power to acquire a fee in its right of way, but only an easement therein, still the making and delivering to it of a deed of the fee would transfer the title. The transaction would be *ultra vires*, but, upon principles now well established, it would be valid until assailed in a direct proceeding brought for that purpose by the government. Private persons could not attack it in collateral actions. *John V. Farwell Co. v. Wolf*, 96 Wis. 10. The relator is not, therefore, a riparian owner, and suffers no private injury.

Thus far we agree, in substance, with the conclusions reached below. The trial judge, however, concluded that navigation was in no way injured by the structures, and so, although they were purprestures, they were not public nuisances; that, the attorney general not appearing in court and asking abatement thereof on behalf of the state, a court of equity would not abate them. With this conclusion we cannot agree. It is true that a purpresture on the public land is not necessarily a public nuisance. Gould, Waters (2d ed.), § 21. A purpresture is a permanent invasion of the public land. A nuisance is an injury to the public rights of navigation, fishing, and the like. It is true that it has been held in California that a court of equity in this country has not the power to decree the abatement of a mere purpresture which is not a public nuisance. *People ex rel.*

*Teschemacher v. Davidson*, 30 Cal. 379. A different conclusion was, however, reached in *People v. Vanderbilt*, 26 N. Y. 287, where it was distinctly held that a mere purpresture is liable to abatement in an action in equity at the suit of the attorney general, irrespective of the question whether it is actually a nuisance, and that the offer to prove that a purpresture, such as a pier in navigable waters, was not in fact injurious to navigation, was properly overruled. Similar conclusions were reached in *Revell v. People*, 177 Ill. 468, and *U. S. v. Brighton R. Co.* 25 Fed. Rep. 465. The authorities cited in those cases entirely justify the decisions, and we have no hesitation in adopting the latter rule.

The complaint before us was framed in the double aspect of a complaint to enforce the rights of the state and the private rights of an alleged riparian owner as well, but the proof showed that there were no riparian rights in the relator. The case of the state, however, remained fully proven and unaffected by the failure of the private claim. Thus it stood when judgment was rendered: A complaint charging a purpresture on the lands of the state, and demanding its removal, filed by the proper officer. The proof showing all the facts essential to a judgment as prayed in the complaint. The attorney general had not withdrawn, nor attempted to withdraw, the complaint, or discontinue the action. We cannot but think that, under the circumstances, it was the duty of the court to render judgment of abatement. What might have been the duty of the court had the attorney general applied for leave to discontinue as to the public right, we need not consider, for there was no such application. Judgment of abatement of the illegal structures, as invasions of the public domain, should have been rendered.

*By the Court.*— Judgment reversed, and action remanded with directions to render judgment for the plaintiff as prayed in the complaint.