CITY OF MADISON, Respondent, vs. THE STATE, Appellant.

*May 10—June 4, 1957.*

256

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondent there was a brief and oral argument by *Harold E. Hanson,* city attorney.

A brief was filed by *Robert D. Sundby* of Madison, counsel for the League of Wisconsin Municipalities, and *Harry G. Slater,* deputy city attorney of Milwaukee, as *amici curiae.*

FAIRCHILD, J.  The state contends that the legislature did not intend by the 1927 and 1931 acts to authorize construction of a building of the size and character proposed; that if those acts be construed to authorize the proposed building, they are unconstitutional; that the proposed building would serve a local rather than a state public purpose; that the city should pay adequate consideration for the use of the lake bed; and that the city has no authority to spend its funds to erect a building on land subject to recapture by the state.

Ch. 485, Laws of 1927, purported to establish a "dock line." Sec. 30.02 (1), Stats., authorizes municipalities to establish dock lines. In 1927, the existing form of this section did not prescribe the effect of such dock lines but ever since the enactment of ch. 455, Laws of 1933, it has been clear that dock lines established under sec. 30.02 (1) were a limitation upon the right of a riparian owner to extend a wharf or pier into navigable water. By enactment of ch. 301, Laws of 1931, the legislature made it clear that the dock line it had established in 1927 was not to affect rights of riparian owners. Ch. 301 stated that the 1927 dock line should not supersede dock lines established by the city of Madison in so far as riparian owners are concerned and that the 1927 dock line should in nowise be construed as being for the benefit of riparian owners. It was made plain in 1931 that

the establishment of the dock line in 1927 was to be construed as a grant of authority to the city within the area between the shore and the dock line.

The authority granted is "to construct and maintain on, in, or over said Lake Monona . . . parks, playgrounds, bathing beaches, municipal boathouses, piers, wharves, public buildings, highways, streets, pleasure drives, and boulevards." The state asserts that by the doctrine of *noscitur a sociis* the extent of the meaning of the term "public buildings" must be determined from the words with which it is associated. The state suggests that the other enumerated uses are all related in some degree to the improvement of the use and enjoyment of Lake Monona and that therefore only those public buildings which are related to such improvement of use and enjoyment are authorized.

That the proposed auditorium and civic center is a public building in the broadest sense of the term, is of course, obvious. A municipal office building, fire or police station would also be a public building in the broad sense of the term and might be quite unrelated to the use and enjoyment of the lake. It is unnecessary to decide at this time whether buildings of such purely administrative character could properly be placed on the lake bed by the city and we do not construe the judgment of the circuit court as so deciding. We are of the opinion that a building of the type generally described in the findings of the circuit court is not so unrelated to the use and enjoyment of the lake as to be outside the scope of the term "public buildings" as used in the list of purposes in ch. 301, Laws of 1931. Enjoyment of scenic beauty has been recognized as one of the public rights in navigable waters. *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 515g, 53 N. W. (2d) 514, 55 N. W. (2d) 40. The erection of a substantial public building in the proposed area may reasonably be expected to improve the appeal of the particular area when viewed from the lake

considering the comparatively steep grade and the presence of the railroad tracks at its foot described in the findings. The purposes of the proposed building are in large part recreational and it can reasonably be expected that the building will attract to the site large numbers of people both from Madison and elsewhere who would not otherwise come, and provide a vantage point from which these people may enjoy the natural beauty of Lake Monona. Although one can draw a minor line of distinction between the opportunities for outdoor recreation provided by parks and pleasure drives on the one hand, and the opportunities for indoor recreation afforded by an auditorium, art gallery, and the like, the enjoyment of both types of facilities is enhanced by a naturally beautiful setting. We see no conflict between the purposes for which the proposed building will be used and the purposes of the other facilities enumerated which would be a basis for concluding that the proposed building was not authorized.

We note that in at least two sessions the attention of the legislature has been drawn to the question of the authority of the city to carry out its plans. In 1955, the legislature gave consent to the commencement of this action. It did not then enact any law limiting the authority of the city. The matter is before the current session of the legislature. Bill No. 300, A., prescribing a limitation upon the height of any building erected in this area, has been passed by the assembly and is now under consideration in the senate. No limit of size or cost of a building is expressed in ch. 301, Laws of 1931.

Except for the fact that we are dealing with a recreational building instead of a park area, much of what was said in *State v. Public Service Comm.* (1957), 275 Wis. 112, 81 N. W. (2d) 71, is applicable here to the constitutional issues asserted by the state. A public body will control the use of the proposed building; it will be devoted to public purposes

and open to the public; the diminution of lake area will be very small when compared with the whole of Lake Monona; no one of the public uses of the lake as a lake will be destroyed or greatly impaired; the disappointment of those members of the public who may desire to boat, fish, or swim in the area to be filled is negligible when compared with the greater convenience to be afforded those members of the public who will use the building. As pointed out with reference to the park involved in the case cited, the purpose to be served is not local in any sense which would involve an improper use of state property; the authority granted to Madison is merely revocable permission to use the property, is not a grant of title, and no consideration need be exacted from the city.

The state questions the authority of the city to use tax money to build the proposed building in view of the fact that the state would have the power to revoke the permit given the city. The expenditure of tax money, however, would be a necessary incident of any filling or construction within the area described and must have been contemplated by the legislature when the authority was given.

The establishment by the city of a shore line in 1937, 100 feet out into the lake and its establishment of a shore line in 1945 which coincides with the dock line established by the legislature in 1927 were both approved by the public service commission under general statutes. No direct challenge has been made in this case to the propriety of those shore lines although the statute requires a shore line to conform as nearly as practicable to existing shores. We do not believe that it is necessary to determine the legal effect of these actions by the city because in our opinion the authority of the city to proceed with its building is sufficiently determined by the acts of 1927 and 1931 referred to.

The state challenges a finding by the court that the city is the owner of riparian rights in the area involved. We do

not deem a finding as to ownership of riparian rights necessary in this action. Upon this point the record would sustain a finding that whatever rights the original owners of block 87 had with respect to the area which the city is filling, were conveyed to the Milwaukee Road; whatever rights the Milwaukee Road had with respect to said area were subsequently conveyed to the North Western Railway; whatever rights the North Western Railway had with respect to said area were conveyed to the city. The record suggests that the state itself is the owner of block 86, and blocks 86 and 87 are the only two involved. The history of the construction of the railroad tracks and the conveyances to the railroads in the same general area is reviewed in *Attorney General ex rel. Askew v. Smith* (1901), 109 Wis. 532, 85 N. W. 512.

*By the Court.*—Judgment affirmed.