JACKSON, Appellant, v. CITY OF MADISON and others, Respondents.

*December 2, 1960—January 10, 1961.*

For the appellant there were briefs by *Ela, Christianson, Ela, Esch, Hart & Clark* of Madison, and oral argument by *Walter P. Ela.*

For the respondents there was a brief and oral argument by *Harold E. Hanson,* city attorney, and *Randolph R. Conners* of Madison, for the Frank Lloyd Wright Foundation.

MARTIN, C. J.   Two questions are raised by the appellant:

1. Will it be a gross abuse of discretion by the Madison city council to spend $5,500,000 of its taxpayers' money to build a civic auditorium and parking ramp on the bed of Lake Monona which is owned by the state and for the use of which the state has granted to the city only a revocable permit?

2. Does sec. 66.073, Stats., as amended by ch. 8, Laws of 1959, prohibit erection of the proposed parking ramp and auditorium on the ends of Monona avenue and South Pinckney street in the city of Madison?

The city of Madison is in the process of planning and proposes to construct an auditorium, civic center, and parking ramp on the so-called "Monona Terrace" site, which area extends about 900 feet from the west side of South Carroll street across the end of Monona avenue which is now known as "Law Park" to the east side of South Pinckney street. In width it would extend over approximately 300 feet of land reclaimed from Lake Monona to a dock line established

by ch. 485, Laws of 1927, as amended by ch. 301, Laws of 1931.

By ch. 301, Laws of 1931, the legislature stated that the dock line thereby established was "only for the purpose of authorizing said city of Madison to construct and maintain on, in, or over said Lake Monona, but not beyond said established line, parks, playgrounds, bathing beaches, municipal boathouses, piers, wharves, public buildings, highways, streets, pleasure drives, and boulevards," and granted to the city concurrent jurisdiction with the state of Wisconsin of and over the dock lines theretofore established by the city and the dock line established in said chapter.

In 1937 and 1945 the city established certain shore lines which included that along the area here involved, and in each case the public service commission approved the same under sec. 30.02 (1) (a), Stats. Pursuant to permission granted by the legislature in 1955, the city brought a declaratory action against the state to determine the city's rights under ch. 485, Laws of 1927, and ch. 301, Laws of 1931. In that action the circuit court held the enactments constitutional in authorizing the city to construct the auditorium and civic center here described.

Thereafter the city filled in this shore of Lake Monona and built thereon a park, a parking lot, and a public highway.

In 1953 a committee was named by the city council to ascertain, among other things, the feasibility of the proposed auditorium construction and various preliminary studies were made by firms engaged by said committee.

By ordinance in June of 1954, the Madison city council voted to issue its general obligation bonds in an amount not exceeding $4,000,000 to build and equip an auditorium and civic-center building, subject to referendum of the electors. By such referendum on November 2, 1954, the bonds were approved, and were subsequently issued. Two advisory referenda were submitted at the same time, on which the electors

approved the site in question and the employment of Frank Lloyd Wright as architect for the project.

Further surveys and tests were made to determine the suitability of the Monona Terrace site for the structure designed by Frank Lloyd Wright and in 1956, after receiving reports and recommendations from the experts who made the studies, the city entered into a contract for the employment of the Frank Lloyd Wright Foundation as architect for the project.

In November of 1956, the issuance of general obligation bonds in the sum of $2,500,000 by the city for the acquisition of "sites for municipal parking lots and the construction of buildings and other equipment and appurtenances" with respect thereto was approved by the electors on a referendum. The city proposes to use $1,500,000 of the proceeds of these bonds, together with the $4,000,000 previously issued for the auditorium, in constructing said auditorium and a parking ramp.

Pursuant to authorization of the legislature, the city commenced an action for declaratory judgment involving the constitutionality of the 1927 and 1931 laws as they related to this proposed project. That action resulted in *Madison v. State* (1957), 1 Wis. (2d) 252, 83 N. W. (2d) 674, where this court held that those enactments validly authorized the city to erect the proposed structure at the Monona Terrace site.

In 1957 the legislature passed a bill limiting the height of any building erected in this area, which would have prohibited construction of the proposed project. At the next session of the legislature, this law was repealed.

Appellant's first contention is that the expenditure of $5,500,000 by the Madison city council for construction on a site for the use of which the city has only a revocable permit from the state (as held in *Madison v. State, supra*), would constitute a gross abuse of discretion. In *Madison v.*

*State* it was argued that the city has no authority to spend its funds for construction on such land, and this court stated (p. 260):

"The expenditure of tax money, however, would be a necessary incident of any filling or construction within the area described and must have been contemplated by the legislature when the authority was given."

The general rule applicable is stated in 13 McQuillin, Mun. Corp. (3d ed.), Public Improvements, p. 103 *et seq.,* sec. 37.26, as follows:

"Concerning the necessity or utility of local improvements, and the extent thereof, the proper municipal authorities, acting in good faith within the limits of the law applicable, and solely for the public welfare, may determine without judicial interference . . . the size, kind, or location of a building, as for a library or memorial edifice; . . . necessity for auditorium and selection of a site for an auditorium; . . ."

The Madison city council has exercised its discretion in determining that the auditorium project shall be constructed at the Monona Terrace site and it has the state's permission to construct it there. This is not an abuse of its discretion simply because the state could divert the site to another public purpose sometime in the future.

We have held the enactments valid which authorize the construction of the project at the site in question and the expenditure of tax money on such construction was clearly contemplated by the legislature in granting that authority. The Building Height Law of 1957 was frankly publicized as designed to prohibit the construction of this very project, and its repeal at the following session constituted a further invitation to the city to proceed with its plans. The city has the right to rely on the good faith of the legislature in making the grant with full knowledge of the city's plans to use the site for a public building.

Appellant cites no case where a similar grant by the state to a municipality for a public use has been revoked, whereas respondents have called our attention to several instances where the state has permitted such grants to continue for many years. A consideration of what the consequences of a revocation by the state would be is not necessary to a decision here, but the fact that the state has in no similar situation exercised its right to revoke such a grant indicates the city council may rely on the assumption that the state would not do so in this instance.

Since it is in the city council's discretion to determine the necessity, size, kind, and location of a public building, it is not for the courts to label the exercise thereof an abuse merely because they would have exercised it in a different way. As stated in *Wagner v. Milwaukee* (1923), 180 Wis. 640, 644, 645, 192 N. W. 994:

"Assuming, as we are bound to, that the legislative discretion vested in and now exercised by the common council by the enactment of the ordinance in question is the result of its legislative judgment, the courts cannot bring such exercise under their control and substitute something else therefor. The motives which may prompt a legislative body to act in any particular way within its powers is not within the field of judicial scrutiny either as to such subordinate legislative bodies as common councils . . . or the legislature. . . . If the effect of the ordinance be, as claimed by plaintiff, an economic mistake, a municipal extravagance, and an improper burden upon the taxpayers, it can be remedied rather by the ballot than by injunction." See also *Kendall v. Frey* (1889), 74 Wis. 26, 29, 42 N. W. 466.

It was held in *Madison v. State, supra* (pp. 258, 259), that the proposed auditorium and civic center is a "public building" within the scope of that term as used in ch. 301, Laws of 1931. As there indicated, the facilities to be provided by the proposed project will be largely recreational in character and its location at the Monona Terrace site will

enhance the enjoyment of the lake by the public generally. That its functions as an auditorium, art gallery, and other indoor recreational facilities could be served as well if built upon some other site does not indicate a gross abuse of discretion by the city council in locating the building where the enjoyment of its facilities will be enhanced by the naturally beautiful setting. And while the citizens of Madison will no doubt get the most use of such a building, there can be no question but that it will be an attraction to many other people who would not otherwise avail themselves of the opportunity to enjoy the natural beauty of the lake.

A number of appellant's arguments are directed to questions which might arise on a retaking by the state. We cannot now anticipate questions which would be presented in such a situation.

With respect to the second question, appellant contends the proposed building is prohibited by sec. 66.073, Stats., which, prior to its amendment in 1959, provided as follows:

"Any city council may by ordinance establish dock lines, regulate the construction of piers and wharves extending into any lake or navigable waters, prescribe and control the prices to be charged for pierage or wharfage thereon, prescribe and regulate the prices to be charged for dockage and storage in the city, and lease the wharfing privileges of the rivers and navigable waters at the ends of streets, giving preference to owners of adjoining land. No buildings shall be erected on the ends of streets, and a free passage over the same for all persons, with their baggage, shall be reserved."

By ch. 8, Laws of 1959, the following language was added:

". . . but nothing herein shall be construed to prohibit the erection of public buildings by a municipality within a filled-in area of a lake or river where such municipality has been granted specific authority therefor by the legislature, or in conjunction therewith, in any street end or approaches

thereto. No such construction on any street end or approaches shall prevent access to the navigable water."

Both enactments, so far as they relate to street ends, are designed to insure public access to the water. The rule is stated at 64 C. J. S., Municipal Corporations, p. 134, sec. 1717, as follows:

". . . the state legislature has the paramount and plenary power to declare the purposes to which streets may be appropriated."

And at 64 C. J. S., Municipal Corporations, p. 36, sec. 1665:

"Subject to the limitations contained in the constitution of the United States and in its own constitution, the power of a state to vacate streets or other public ways within its borders is plenary and absolute, and this power may be exercised by the state legislature, or may be delegated to a municipal corporation or to a board or commission, notwithstanding a constitutional provision prohibiting the legislature from vacating streets by local or special laws."

There is now no improved roadway to the lake shore from the ends of Pinckney street, Monona avenue, or Carroll street. The proposed project will provide greatly improved access from those street ends to the shore of Lake Monona. Pedestrians will have a complete sidewalk approach either through the structure or over ramps and it will be possible to operate vehicles from Pinckney street and Carroll street over ramps to Law Park and the lake shore. It will be possible to transport boats from those streets down to the edge of the lake for launching. In our opinion the access provided by the proposed project fulfils the purposes intended by the legislature in sec. 66.073, Stats., as amended.

Respondents have moved for review of the judgment in so far as it dismissed the counterclaim for a declaration that the city owns the fee-simple title to the portion of the bed

of Lake Monona on which the proposed project will be erected. Their position is that the actions of the city council on several occasions, establishing the shore lines in the area in question, which actions were approved by the public service commission, had the effect of extending the ownership of the riparian owner out to the newly established shore lines. The facts upon which respondents' argument is based were all before this court in *Madison v. State, supra,* and it was there held (p. 260):

". . . the authority granted to Madison is merely revocable permission to use the property, is not a grant of title, and no consideration need be exacted from the city."

We are still of that opinion.
*By the Court.*—Judgment affirmed.