MINEHAN, Respondent, vs. MURPHY and another, Appellants.

*February 23—March 12, 1912.*

*Waters: Dams: Artificial condition may become natural: Lake or river? Question for jury: Evidence.*

1. The artificial condition of a lake or stream, originally created by a dam, may by lapse of time become a natural condition.
2. Evidence showing, among other things, that a dam built fifty years ago across a small, unmeandered, unnavigable creek connecting two lakes had created navigable water between it and the upper lake and had raised the level of that lake; that between the dam and the upper lake the water retained many of the characteristics of a river, its course being winding, its width varying from sixty to several hundred feet, and there being at all times a perceptible current; and that there was but a narrow navigable channel which was kept open largely by the passing of small boats and launches, is *held* to sustain a verdict to the effect that such navigable water was a river, not a lake.

APPEAL from a judgment of the county court of Dodge county: FRANK M. LAWRENCE, Judge. *Affirmed.*

Action in ejectment. The pleadings raised the question of whether the bed of the navigable water which bounded plaintiff's land was that of a lake or that of a river. She claimed that it was the latter and that she had title thereto, incidental to her title to the bank, subject to ordinary public rights in such waters, and so defendants, who adversely to her occupied a part of such bed on her side of the center line of the stream, were liable in the action. They claimed the *locus in quo* to be bed of a lake and therefore that plaintiff's riparian right was not such as to enable her to maintain ejectment.

The evidence established, or tended to establish, this: Plaintiff had sufficient title to enable her to maintain ejectment, if the *locus in quo* was river bed, otherwise not. Her title was based on a chain of conveyances reaching back to a remote grantee, her western boundary being described as the

center line of the creek. That, in a state of nature and when the United States parted with title to the land, was a small, unmeandered, unnavigable rivulet, about three miles long, connecting Fox lake with Beaver Dam lake in Dodge county,—the latter lake being the lowest. The land in question was a short distance below the outlet from the Fox lake basin and on the left bank of the creek. Some fifty years ago a fourteen-foot dam was constructed across the creek, which created navigable water therefrom to the lake and raised the lake level. The artificial navigable water retained much of the characteristics of a river. It was of varying width, from several hundred feet down to sixty or less. There was but a narrow navigable channel which was kept open largely by the passing of small boats and launches. There was, at all times, a perceptible current,—more when the gates at the dam were opened than otherwise. The course from the outlet of the conceded lake to the dam was of winding character and more like that of a river than that of a lake. Plaintiff, for years, had claimed title as if the water was that of a navigable stream. There were many boat houses opposite her shore line, the proprietors of which located them with her permission and paid for the privilege of occupancy. The particular place was taken possession of by defendants' predecessor under contract with the plaintiff.

Defendants' counsel moved the court for a directed verdict. The motion was denied. The cause was submitted to the jury under instructions which were not excepted to. Some requests were made for instructions by defendants' counsel, which were refused, and the rulings duly excepted to. The jury found for plaintiff and judgment was rendered accordingly.

For the appellants there was a brief by *W. C. North* and *Burke & Lueck,* and oral argument by *M. E. Burke.*

For the respondent there was a brief by *Kading & Kading,* and oral argument by *C. A. Kading.*

MARSHALL, J.   The court instructed the jury, in effect, that, if the artificial condition mentioned in the foregoing statement had existed, before the commencement of the action, for the full period requisite to divest title to the real estate from one and vest it in another by the law of adverse possession, and the *locus in quo* was bed of a navigable lake rather than of a navigable river, the former private title had become vested in the state the same as that of natural lakes, and if such *locus in quo* was bed of a navigable stream, the former private title had become changed to the same character of qualified title as that of riparian proprietors to the beds of navigable rivers in general.   That was good law as conceded by counsel on both sides.   The court gave it as settled by the decisions of this court, following the letter and logic, particularly, of *Smith v. Youmans,* 96 Wis. 103, 70 N. W. 1115; *Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436; *Diana S. Club v. Lamoreux,* 114 Wis. 44, 89 N. W. 880; *Johnson v. Eimerman,* 140 Wis. 327, 122 N. W. 775.

In the last case cited the court, speaking by Mr. Justice BARNES, said with reference to a long existing artificial condition, as in this case: "The artificial condition originally created by the dam became by lapse of time a natural condition." In *Diana S. Club v. Lamoreux,* speaking on the same subject, it was said: "By operation of the statute of limitations the artificial condition is thus stamped with the character of a natural condition, and the title to the lands covered by the waters of the lake is deemed to have passed from private ownership to the same trust as that of lands covered by the waters of natural navigable lakes."

The law having been thus given to the jury with instructions, which are not complained of, as regards the distinction between a lake and a river, leaving to the jury merely the question of determining from the evidence the ultimate fact in controversy, counsel make no serious complaint, as we understand it, except in so far as the court failed to hold that there

was no jury question in respect to the matter on the evidence. The point was raised that there was no such question by motion to direct a verdict as well as by the several requests for instructions. No special attention need be paid to the requests as they involve the same subject as the motion.

The statement of facts sufficiently meets the contention that there was no jury question as to whether the body of water was that of a lake. It is there said, in effect,—and we repeat it,—there was competent direct evidence and there were evidentiary circumstances tending to show that the disputed premises were in the waters of a navigable river. So long as there was evidence, circumstantial and direct, or either, tending to prove that such was the fact, the question was for jury solution as to whether it did so efficiently or not. Hence the result must be affirmed.

*By the Court.*—So ordered.

The following opinion was filed March 16, 1912:

TIMLIN, J. I do not wish to be counted as assenting to the *dictum* hereinafter mentioned contained in the opinion in this case and some other cases.

I find nothing to criticise in the words "the artificial condition originally created by the dam became by lapse of time a natural condition." These words are to my mind proper to describe a situation whereby riparian owners and others by long acquiescence and user became entitled to have the easement of overflow continued, their right to reach the water continued, and the water continued at its height and in the condition in which it was kept for more than twenty years as against any one who would, by draining the lake or pond or by other material interference, destroy the easement or render less available or valuable the riparian rights. But I do not agree that the title to the lands covered by water raised by a dam in a river is deemed to have changed from private

ownership to ownership by the state, even where that river is the outlet of a lake and the raised water reaches back to the level of the waters of the lake.    The person erecting and maintaining the dam acquires by condemnation or adverse user an easement to overflow such lands.    If by purchase or in consequence of a particular statute he should acquire title for that purpose, he, and not the state, succeeds to the private ownership of the person whose title he has acquired.    But where he acquires an easement the former proprietorship continues subject to the easement.    Under the *dictum* stated in this and the other cases referred to in the opinion, the owner of the land subject to the easement of flowage is to be cut off by a supposed adverse possession which never existed.    The state has in fact made no claim to the land.    Neither has there been a day in which the owner of the submerged land could have brought an action against the state to assert his title, for the reason that the state was not in possession or making any claim, and for the further reason that the legislature has not authorized any such suit against the state. There is no statute giving the state title under such conditions, and if there were it would be unconstitutional.    The power to create limitations of this kind is legislative, not judicial.    *Missouri v. Illinois,* 200 U. S. 496, 520, 26 Sup. Ct. 268.    Long before the XIVth amendment to the constitution of the United States was adopted forbidding any agency of the state, legislative or judicial, to deprive any person of his property without due process of law, it was decided by the supreme court of the United States in *Webster v. Cooper,* 14 How. 488, that a legislative act making the seisin of the occupant adverse as against one who had no legal right to bring an action, was invalid as taking away the property of one man and vesting it in another.    The *dictum* here criticised would take away the property of one man and vest it in the state. See, also, *Pratt v. Churchill,* 42 Me. 471; *Wass v. Bucknam,* 38 Me. 356; *Adams v. Palmer,* 51 Me. 480; *Forster v. Fors-*

*ter,* 129 Mass. 559; *Christmas v. Russell,* 5 Wall. 290, 300. There must be some time within which the landowner could have brought an action and he must have neglected during that time to do so. To attempt to take his property arbitrarily and vest it in the state merely because some other person has been twenty years in uninterrupted enjoyment of an easement thereon, seems to me very obviously unsound and unconstitutional. *Terry v. Anderson,* 95 U. S. 628; *McGahey v. Virginia,* 135 U. S. 662, 705 *et seq.,* 10 Sup. Ct. 972.

I am authorized to add that Mr. Justice KERWIN concurs in the foregoing.