Haase, Respondent, vs. Kingston Co-operative Creamery Association, Appellant.

*September 14—October 10, 1933.*

For the appellant there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Ray C. Dempsey.*

For the respondent the cause was submitted on the brief of *A. W. Lueck* of Beaver Dam.

Owen, J.   In 1848 a dam was built across the creek known as Grand River, in Green Lake county, overflowing lands

described in the complaint, forming a mill-pond which until 1931 was known as the Kingston mill-pond. In the latter year the legislature passed an act changing the name of this mill-pond to Grand Lake. A portion of the lands overflowed was owned in fee by the builder of the dam. A portion of the other lands overflowed was acquired by the proprietor of the dam. The plaintiff, as successor in title, now owns the fee to all of the lands so overflowed.

During the winter of 1930–31 the defendant harvested ice on this mill-pond and converted the same to his own use. This action is brought to recover the value of the ice, and defendant claims that the plaintiff is not the owner of the ice nor of the lands under the lake or pond, but that the title thereto is in the state, and that the public is privileged to take the ice from the said lake. *Rossmiller v. State,* 114 Wis. 169, 89 N. W. 839.

The creek across which the dam was built in 1848 was a non-navigable stream. All of the lands overflowed were the subject of private ownership. At all times such lands have been and now are assessed for taxes and the taxes paid thereon. The pond or lake formed by the dam is concededly capable of navigation, and the public has been permitted to and has during all of the years exercised the rights thereon which belong to the public upon navigable waters. The public has used such waters for boating, swimming, hunting, fishing, skating, and similar recreations. The defendant claims that the continuous enjoyment of these rights upon these waters by the public has vested title to the lands under the waters in the state.

The case of *Pewaukee v. Savoy,* 103 Wis. 271, 79 N. W. 436, is relied upon as establishing this doctrine. In that case the natural waters of Pewaukee Lake, a concededly navigable lake, were artificially raised by the construction of a dam. It appears that a street line in the village of Pewaukee was coincident with the shore line of said lake; that Savoy,

who constructed the dam, attempted to build a fence along the street line for the purpose of preventing the public from reaching the waters of said lake from this street. It was not only held in that case that the public had the same rights upon the waters of said lake so artificially created, but that the state had title to the land below the artificial waters, by the application of the doctrine of adverse possession. It is contended here that because the public has been permitted to exercise and enjoy on this mill-pond all of the rights and privileges which belong to the public upon natural, navigable waters, that the doctrine of the *Savoy Case* should be applied, with the result that title to the land beneath the pond as well as the ice formed upon the surface thereof is in the state. It is true that where the waters of a natural, navigable lake are artificially raised, the public and the riparian owners enjoy the same rights in and upon such artificial waters. "The artificial condition originally created by the dam becomes by lapse of time a natural condition." *Johnson v. Eimerman,* 140 Wis. 327, 122 N. W. 775. However, it does not seem necessary, in order to secure to the public the rights which the public has enjoyed for a period of time equal to that required by the statute of limitations, that the title to the land beneath the waters should be held to have thereby passed from private ownership to the ownership of the state. The public is fully protected in its rights by the remedy applied in *Smith v. Youmans,* 96 Wis. 103, 70 N. W. 1115, where the owner of the dam was restrained from tearing it down at the suit of riparian owners abutting on the lake.

While a dam is a fairly permanent institution, it is by no means an agency of perpetual existence. It will decay and wear away in time, and, when it does, the waters will recede to their natural level. While the owner of the dam may be restrained from affirmatively interfering with the artificial level which he has created, it is not at all clear how he could

be coerced to make the repairs necessary for its perpetual existence, especially when the proprietor of the dam becomes bankrupt, as occasionally happens. Under such circumstances, the application of the principle in the *Savoy Case* would strip the riparian owners of their titles and vest the same in the state, when the water receded, a result against equity and justice. This doctrine was repudiated by Mr. Justice TIMLIN in an opinion in which Mr. Justice KERWIN concurred, in *Minehan v. Murphy,* 149 Wis. 14, 134 N. W. 1130. We have seen no answer to the position taken by Mr. Justice TIMLIN in that opinion, in which he holds that under such circumstances no such thing as adverse possession in favor of the state ever existed. We can see none. It appears to us wholly unnecessary, in order to protect the rights of the public upon such artificial waters, to go to the extent of saying that the state has acquired the title to the land under such waters by adverse possession. The rights of every one are fully secured when the public and riparian owners are accorded, and protected in, the same rights upon such waters as they are entitled to enjoy upon natural, navigable waters. But the application of such doctrine to artificial waters created upon private lands, as it apparently was applied in *Johnson v. Eimerman* and *Minehan v. Murphy,* becomes far less defensible. It is but trite to say that the landowner may devote his land to any lawful purpose. If he sees fit to create a pond or lake upon his own premises for his own purposes, it is difficult to see why he should permit the public the ordinary use of such waters at the peril of losing title to the land under the water. Such a doctrine would deprive many of our water-power enterprises of the title to land overflowed, vest it in the state, remove it from taxation, and reduce the capital investment in the enterprise upon which it has been supposed it was entitled to a return in the form of rates and charges for utility service. We think the true rule is this: where the owner of land creates an artificial body of water upon his own premises, he may

permit the public to enjoy the ordinary use of such waters, and, it may be, that by the lapse of time such enjoyment will ripen into a dedication which he will not be permitted to destroy. But such a use of the waters does not amount to an adverse possession in favor of the state giving the state title to the land under the waters, and, so far as previous decisions to the contrary are concerned, they are hereby overruled.

This rule does not deprive the public of any rights. It is not necessary to the enjoyment of those rights that the title to the land under the artificially created water should be in the state. Such right as the public has acquired will be fully protected by the ordinary remedies. The title to the ice formed on this pond was in the plaintiff as the owner of the land beneath the same, and he is entitled to recover the value of the ice taken by the defendant. *Reysen v. Roate,* 92 Wis. 543, 66 N. W. 599; *Abbott v. Cremer,* 118 Wis. 377, 95 N. W. 387; *Gadow v. Hunholz,* 160 Wis. 293, 151 N. W. 810; *Bigelow v. Shaw,* 65 Mich. 341, 32 N. W. 800.

*By the Court.*—Judgment affirmed.