L.P. VOIGT, Secretary, Department of Natural Resources
Your first inquiry relates to the legality of utilizing Outdoor Recreational Aids Program (ORAP) funds to reconstruct deteriorated milldams and improve millponds for recreational purposes. Your question is presented under the following specific hypothetical circumstances:
 "a. The land surrounding the millpond will be totally in private ownership, and there will be no public access to the water surface; *Page 246 
 "b. The land surrounding the millpond will be totally in private ownership, however public access can be gained by navigating downstream into the millpond from an upstream location;
 "c. The land surrounding the millpond will have substantial private ownership, however a public land access to the millpond is or will be provided;
 "d. The land surrounding the millpond is partially privately owned, however a local public park or other recreational facility is or will be provided;
 "e. The land surrounding the millpond is partially privately owned, however a state park or other recreational facility is riparian to the millpond;
 "f. The land surrounding the millpond is totally in public ownership, either local or state."
Secondly, you are interested in the existence of other state funds which might be used for reconstruction of milldams in any of the above-enumerated situations.
Finally, you inquire whether it would be legally possible for the legislature to enact legislation to provide state funding of milldam reconstruction in each of these situations.
The framework of the Outdoor Recreation Program is set forth in sec. 23.30, Stats. Subsections (1) and (3) (a) (b) read as follows:
 "23.30 Outdoor recreation program. (1) PURPOSE. The purpose of this section is to promote, encourage, coordinate and implement a comprehensive long-range plan to acquire, maintain and develop for public use those areas of the state best adapted to the development of a comprehensive system of state and local outdoor recreation facilities and services in all fields, including, without limitation because of enumeration, parks, forests, camping grounds, fishing and hunting grounds, related historical sites, highway scenic easements and local recreation programs, except spectator sports, and to facilitate and encourage the fullest public use thereof.
"*** *Page 247 
 "(3) NATURAL RESOURCES BOARD. The natural resources board is the body through which all governmental agencies and nongovernmental agencies may coordinate their policies, plans and activities with regard to Wisconsin outdoor recreation resources. To this end it shall:
 "(a) Consider and recommend to the governor and legislature broad policies and standards to guide the comprehensive development of all outdoor recreation resources in Wisconsin, including, without limitation because of enumeration, outdoor recreation development in relation to state population patterns, low-cost sewage system studies, the several outdoor recreation activities, outdoor recreation development to aid the state recreation industry, and policies and standards to coordinate the respective outdoor recreation development programs of federal, state and local governmental agencies and the recreation programs operated by private enterprise.
 "(b) Coordinate the development of a comprehensive long-range plan for the acquisition and development of areas necessary for a state-wide system of recreational facilities. The comprehensive plan shall be based upon the outdoor recreation plans of the several state agencies and local governmental agencies, and shall be coordinated and modified as the board deems necessary to comply with its policies and standards."
It is evident from the above that the program involves multi-step activity designed to achieve recreational facilities for general public use and contemplates area acquisition, maintenance and development. The essential key for utilization of ORAP funds, then, is acquisition of recreation areas for public use. Hence, not only must the Department acquire the milldam area to qualify for outdoor recreation program funds, but a public use must also be evident. Public use may be forthcoming by virtue of either the state's ownership of the area or the presence of a navigable body of water.
State acquisition of an entire area — including land and waterbed — would permit public access to the water, as well as allow public use thereof, and would eliminate the need to determine whether public rights attach by virtue of navigability. However, your hypotheticals describe situations in which the Department of Natural Resources *Page 248 
has not acquired the entire surrounding area. In such situations, the question of navigability is pertinent to whether public rights attach.
Although there have been several different tests of navigability, the present Wisconsin test is that enunciated inMuench v. Public Service Commission (1952), 261 Wis. 492,53 N.W.2d 514, 55 N.W.2d 40. There the court interpreted sec. 30.10
(2), Stats., and concluded that "any stream is `navigable in fact' which is capable of floating any boat, skiff, or canoe, of the shallowest draft used for recreational purposes." Id. at 506.
The language of the present Mill Dam Act, sec. 31.31, Stats., indicates that milldams are authorized only across nonnavigable streams.
 "31.31. Dams on nonnavigable streams. Any person may erect and maintain upon his own land, and, with the consent of the owner, upon the land of another, a water mill and a dam to raise water for working it upon and across any stream that is not navigable in fact for any purpose whatsoever upon the terms and conditions and subject to the regulations hereinafter expressed; and every municipality may exercise the same rights upon and across such streams that they may exercise upon or across streams navigable for any purpose whatsoever."
Rights to the use of natural nonnavigable waters accrue only to riparian owners or their designees and not to the public. Since the purpose of the outdoor recreation program, sec. 23.30 (1), Stats., is to acquire, maintain and develop recreational facilities for "public use," it would appear at first blush that state funds are not authorized to improve milldams across nonnavigable waters because no "public rights" attach thereto.
If, however, the millpond is navigable, public rights may attach. This could happen in two ways: The waterway dammed by a milldam may have been navigable originally, before construction of the milldam. In this case, public rights attach not only to the original navigable area by virtue of the public trust, but to the artificially raised areas as well. See Mendota Club v.Anderson (1899), 101 Wis. 479, 493, where it was held that the public has a common right to navigate waters previously navigable but artificially raised, "the same as though they had always remained in that condition." *Page 249 
The other way public rights may attach is that a nonnavigable waterway behind the milldam may have become navigable after construction of the milldam, in which case public rights attach, but only if there is a subsequent dedication to or prescription by the public. See Haase v. Kingston Cooperative CreameryAssociation (1933), 212 Wis. 585, 250 N.W. 444. However, even if public rights do attach to artificially raised waterways, the state does not take title to the underlying beds. Rather, title to the submerged lakebeds of artificially formed lakes remains in their original owner. Haase, supra, at 589. Moreover, even ownership along the shoreline of an artificially created navigable millpond does not automatically confer riparian rights. While property ownership on a natural body of water confers riparian rights, "[i]n the case of artificial bodies of water, all of the incidents of ownership are vested in the owner of the [submerged] land." See Mayer v. Grueber (1965), 29 Wis.2d 168,176.
The Department should be prepared in each case to compensate landowners whose lands are flooded or rights otherwise impaired by improvements of old dams, for taking of private riparian rights for public use without compensation violates Art. I, sec.13, Wis. Const. Bino v. City of Hurley (1956), 273 Wis. 10, 21. The Department has no obligation, however to compensate a landowner for the loss of his ability to exclude the public from the millpond, for example, in the case of navigable waters surrounded by private land. Such an ability to exclude the public is not a right conferred by riparian ownership. See Branch v.Oconto County (1961), 13 Wis.2d 595, 601-602, 109 N.W.2d 105; 51 OAG 190 (1962).
Returning now to your first question and to your various hypothetical situations, each situation is repeated, and my opinion follows each situation:
 "a. The land surrounding the millpond will be totally in private ownership, and there will be no public access to the water surface."
 Even if the millpond is navigable, there is no public access and, hence, outdoor recreation program funds cannot be used because there is no "public use" involved as required by sec. 23.30 (1). *Page 250 
 "b. The land surrounding the millpond will be totally in private ownership, however public access can be gained by navigating downstream into the millpond from an upstream location."
 I will assume the millpond is now navigable and that it was navigable before construction of the millpond because the language of the hypothetical so indicates. There is public access, and public rights would attach under Mendota Club v. Anderson, supra. Use of ORAP funds would be appropriate, since a public use is involved.
 "c. The land surrounding the millpond will have substantial private ownership, however a public land access to the millpond is or will be provided."
 Again, I will assume the millpond is navigable. If the millpond was navigable before construction of the milldam, public rights attach under Mendota Club. If the millpond was nonnavigable before construction of the milldam, public rights attach only if there has been a dedication or prescription under Haase. Depending on which applies, use of outdoor recreation program funds are appropriate if a "public use" is involved.
 "d. The land surrounding the millpond is partially privately owned, however a local public park or other recreational facility is or will be provided."
 Again, I will assume the millpond is navigable. And, as above in (c), if the millpond was navigable before construction of the milldam, public rights attach under Mendota Club. If the millpond was nonnavigable before construction of the milldam, public rights attach only if there has been a dedication or prescription under Haase. If either one of these theories applies, use of outdoor recreation program funds is appropriate since a "public use" is involved.
 "e. The land surrounding the millpond is partially privately owned, however a state park or other recreational facility is riparian to the millpond." *Page 251 
 Again, as in (c), if the millpond was navigable before construction of the milldam, public rights attach under Mendota Club, and if the millpond was nonnavigable before construction of the milldam, public rights attach only if there has been a dedication or prescription under Haase. And as in (d), ownership of land abutting an artificially formed navigable waterway does not confer riparian rights, except by prescription or dedication, or by purchasing the pondbed from the original owner who was flooded out.
 "f. The land surrounding the millpond is totally in public ownership, either local or state."
 Again, the use of ORAP funds is permissible because of the rationale expressed in (c), (d) and (e) .
I think it is clear that your proposed hypothetical situations present a myriad of potential legal problems and uncertainties in terms of riparian rights; navigability; landowner compensation; dedication, prescription and adverse possession; etc. As previously discussed, ORAP appears to contemplate acquisition of the entire area to be used as a public recreation site. In light of the statutory language, even though very broad in scope, I believe it advisable that the Department commence such a program with the thought of purchasing the entire area to be used for implementation of said program. In acquiring the land underlying the milldam and resultant millpond as well as adequate access property, the Department will assure that the desired goal of public use is achieved.
Your second question is whether other state funds are available for the reconstruction of deteriorated milldams. The Department of Natural Resources has authority to maintain abandoned dams under sec. 29.04 (2), Stats.:
 "(2) Whenever the department determines that the conservation of any species or variety of wild animals will be promoted thereby, the department may maintain and repair any dam located wholly upon lands the title to which is in the state either as proprietor or in trust for the people after giving due consideration to fixing the level and regulating the flow of the public waters." *Page 252 
Section 20.370 (u), Stats., appropriates funds for that purpose. These provisions, however, deal with the conservation of fish and game, rather than recreational considerations and would be so limited in application.
There are also funds available to the State Historical Society appropriated by sec. 20.245, Stats., to carry out sec. 44.02 (2), Stats., to develop outdoor historic sites related to the outdoor recreation program. Depending on the historic interest generated by a restored milldam, funds may be used if public use is involved.
Your third question concerns possible legislation on state funding for milldam reconstruction. The legislature could approve state funding for milldam reconstruction in all cases hypothesized except (a)
RWW:DCM:RJB