WILLIAM R. BECHTEL, Secretary, Department of Local Affairs andDevelopment
Your predecessor has requested my opinion concerning the creation of two small lakes over privately owned land and its relationship to several statutes which you are empowered to administer. The situation is as follows:
A subdivider has created two small lakes over privately owned lands by trapping groundwater and damming an intermittent, nonnavigable stream. The subdivider properly complied with sec.31.33, Stats., relating to Department of Natural Resources approval of dams on nonnavigable streams. The two lakes are joined by a covered conduit and are connected to a navigable river about two miles downstream by an intermittent nonnavigable watercourse.[1] Both lakes, respectively six and eight acres in size, are navigable in fact. *Page 147 
The developer has submitted preliminary and final plats to the head of the Planning Function as required by sec. 236.12 (2) and (6), Stats.
I.
APPLICABILITY OF SEC. 236.16 (3)
Your first question is:
 "Are the public access to navigable water requirements of sec. 236.16 (3), Wis. Stats., applicable to the subdivision?"
It is my opinion that sec. 236.16 (3), Stats., does not apply to this project. Public rights in navigable waters attach by virtue of the public trust doctrine under which state holds the beds of its navigable lakes and streams in trust for the people, subject only to the condition that riparians have a qualified title to the beds of navigable streams. The public, as beneficiary of the trust, enjoys the rights of navigation, fishing, hunting, swimming, bathing, boating, and enjoyment of scenic beauty. Muench v. Public Service Commission (1952),261 Wis. 492, 53 N.W.2d 514, 55 N.W.2d 40. The trust does not extend, however, to the beds underlying nonnavigable lakes and streams: full title to those lands is in the riparian owner.
Public rights attach to the increased surface water formed by artificially raising a previously navigable waterway, although title to the newly formed lake or stream bed remains in the original owner. Mendota Club v. Anderson (1899), 101 Wis. 479,493, 78 N.W. 185; Haase v. Kingston Cooperative CreameryAssociation (1933), 212 Wis. 585, 589, 250 N.W. 444, overrulingPewaukee v. Savoy (1893), 103 Wis. 271, 79 N.W. 536.
In contrast, public rights do not attach, except by prescription or dedication, to the increased surface water area formed by artificially raising a previously nonnavigable
waterway. Haase v. Kingston Cooperative Creamery Association,212 Wis. at 589. The basis for the difference in policy between the two situations illustrated by the Mendota Club and Haase cases is that it is impossible in the Mendota Club situation to differentiate the original navigable area from the newly formed navigable area so that the public could know where its rights of navigation would begin and end. In addition, in the Haase
situation, the state has no *Page 148 
proprietary interest in the bed underlying the nonnavigable waterway, and hence no basis on which the public trust could expand.
Similar to the Haase situation is the creation of an entirely artificial lake. No public rights attach to the surface water of such a body. Rather, "all of the incidents of ownership are vested in the owner of the [submerged] land." Mayer v. Grueber
(1965), 29 Wis.2d 168, 176, 138 N.W.2d 271. Even ownership of land along the artificially created shoreline fails to confer riparian rights. Id. at 179. The public could acquire rights only by dedication or by prescriptive user or over a period of time.Mayer v. Grueber, supra; Haase v. Kingston Cooperative CreameryAssociation, supra.
The statutes do not abrogate this court-made rule that public rights do not attach to lakes created by enlarging a previously nonnavigable waterway. In fact, the statutes recognize the distinction between artificially enlarged navigable streams and artificially enlarged nonnavigable streams. For example, an applicant for a permit to construct a dam in a navigable stream must provide public access to the resulting body of water. Sec.31.14 (3) (c), Stats. This is in accord with the Mendota Club
case which held that public rights accrue to the waters previously navigable but artificially enlarged "the same as though they had always remained in that condition."
An applicant for approval of a dam in a nonnavigable stream, on the other hand, need not provide public access to the resulting navigable body of water. Sec. 31.33, Stats. This is in accord with the Haase case which held that public rights do not attach, except after dedication or prescription, to waters previously nonnavigable but artificially enlarged to become navigable.[2]
Section 236.16 (3), Stats., provides:
 "LAKE AND STREAM SHORE PLATS. All subdivisions abutting on a navigable lake or stream shall provide public access at least 60 feet wide providing access to the low watermark so that there will be public access, which is *Page 149 
connected to existing public roads, at not more than one-half mile intervals as measured along the lake or stream shore except where greater intervals and wider access is agreed upon by the department of natural resources and the head of the planning function, and excluding shore areas where public parks or open-space streets or roads on either side of a stream are provided. No public access established under this chapter may be vacated except by circuit court action."
This section speaks simply of "a navigable lake or stream" and does not include the words "natural" or "artificial." Other statutes regulating navigable waters include the reference to artificial waterways when so intended. Compare secs. 30.19, 144.01 (1), and 144.26 (2) (d), Stats.
It is fundamental that a statute be presumed consistent with the common law unless expressly provided otherwise. 3 Sutherland, Statutory Construction, secs. 5301, et seq. and 6201, et seq. (3d ed. 1943). In this instance, to require public access to entirely artificial lakes where the common law confers no public rights would abrogate the common law. Since sec. 236.16 (3) does not expressly include "artificial" lakes and streams, it must be presumed that the legislature did not intend to include them. Section 236.16 (3), Stats., construed strictly and read together with secs. 31.14 and 31.33, requires public access only to natural navigable lakes and streams. See also, Kusler, Artificial Lakes and Land Subdivisions, 1971 Wis. L. Rev. 369, 382-383 n. 26.
Since sec. 236.16 (3), Stats., is not applicable to artificial lakes, your second question relating to the assumed applicability of that statute need not be answered.
II.
APPLICABILITY OF EXECUTIVE ORDER NO. 67
Your third question is as follows:
 "Since ss. 236.12 (2) and 236.13 (3) specifically limit the Department's plat review authority to compliance with the requirements of ss. 236.15, 236.16, 236.20 and 236.21 (1) and (2); does Governor Lucey's Executive Order #67 permit or require the DLAD to object to this subdivision if the *Page 150 
Department of Natural Resources deems it not in compliance with NR 115 or NR 116, Wis. Admin. Code?"
 NR 115 and NR 116, Wis. Adm. Code, were promulgated pursuant to secs. 87.30, 59.971, and 144.26, Stats. These sections were enacted by ch. 614, Laws of 1965, to establish flood plain and shoreland zoning. Section 87.30 requires counties to adopt a reasonable and effective flood plain zoning ordinance to prevent flood damage. It applies to both navigable and nonnavigable water. Section 59.971 requires counties to zone all unincorporated land within certain distances of navigable waters as defined in sec. 144.26 (2) (d), Stats.
Executive Order No. 67, to which you referred in your question, is entitled "Participation by State Agencies in Flood Hazard Evaluation and Wetland Protection — And Coordination With A Comprehensive Flood Plain-Shoreland Management Program." The applicable provisions of Executive Order No. 67 regarding shoreland zoning are written in general terms.
"IT IS HEREBY ORDERED as follows:
 "The heads of all State agencies shall provide leadership to encourage a broad and unified effort to prevent the uneconomic use and development of the flood plains and wetlands of the State and, in particular, to lessen the risk of flood losses as related to State-owned lands and installations and State-insured or approved or supported improvements and, to ensure consistency of activities with rules and regulations regarding land use and flood plain and shoreland development and management as promulgated by the Department of Natural Resources under the provisions of ch. 614, Laws of 1965."
Paragraph 3 of the Executive Order No. 67 deals with flood plain zoning in more specific terms
 "3. All State agencies responsible for review and approval of applications for subdivision plats, buildings, structures, roads, sanitary or other facilities, shall evaluate existing or potential flood hazards associated with such activities and as may be permitted by law, prevent actions which will expose citizens to unnecessary hazards or cause future public expenditures for flood disaster relief." (Emphasis added.) *Page 151 
The key phrase is "as may be permitted by law." Section 236.12
(2) authorizes the Department of Local Affairs and Development to review plats for compliance with secs. 236.15, 236.16, 236.20, and 236.21 (1) and (2). Section 236.12 (6) expressly limits its review to these sections.
 ". . . Within 20 days of the date of receiving the copies of the plat any agency having authority to object under sub. (2) shall notify the subdivider, and all agencies having the authority to object, of any objection based upon failure of the plat to comply with the statutes or rules which its examination under subsec. (2) is authorized to cover, . . ." Sec. 236.12 (6).
Approval of a preliminary or final plat is conditioned upon compliance with county ordinances. See sec. 236.13 (1) (b). Indeed, the review conducted by the department under secs. 236.16
and 236.20 (4) (d) does include review for compliance with certain local ordinances regarding, for example, minimum street width and lot width and area. Unless a shoreland ordinance contains regulations governing those particular areas, the department has no authority to review plats for compliance with such ordinances. It is limited by statute to an examination of plats to determine compliance only with secs. 236.15, 236.16,236.20, and 236.21 (1) and (2), Stats. Executive Order No. 67 cannot compel agencies to do that which is not permitted by law and, by its terms, it does not purport to do so.
BCL:LMC *Page 152 
[1] I am assuming, for the purposes of this opinion, that sec.30.19, Stats., does not apply.
[2] Compare sec. 30.19 (5) requiring artificial waterways connected to or within 500 feet of an existing body of navigable water to be deemed public waterways.