CARROLL D. BESADNY, Secretary Department of Natural Resources
You have requested my opinion whether statutory public access requirements apply to artificial lakes created within 500 feet of the ordinary high water mark of a navigable stream. You state that a subdivision developer proposes to create two artificial ponds within 500 feet of a navigable stream; your request does not state whether the developer proposes to connect the artificial ponds to the navigable stream. For the reasons which follow, I conclude that an artificial waterway connected with or located within 500 feet of a navigable waterway is a public waterway to which public access must be provided pursuant to sections 236.16 (3) and 30.19 (1)(a) and (5), Stats.
Section 30.19 (1)(a) provides:
 Enlargement and protection of waterways. (1) PERMITS REQUIRED. Unless a permit has been granted by the department or authorization has been granted by the legislature, it is unlawful:
 (a) To construct, dredge, commence or do any work with respect to any artificial waterway, canal, channel, ditch, lagoon, pond, lake or similar waterway where the purpose is ultimate connection with an existing navigable stream, lake or other body of navigable water, or where any part of such artificial waterway is located within 500 feet of the ordinary high-water mark of an existing navigable stream, lake or other body of navigable water.
Section 30.19 (4) authorizes the department to issue a permit upon a finding:
 that the project will not injure public rights or interest, including fish and game habitat, that the project will not cause environmental pollution . . ., that the project conforms to the requirement of laws for the platting of land and for sanitation and that no material injury to the rights of any riparian owners on any body of water affected will result . . . . *Page 317 
Section 30.19 (5) further provides that "all artificial waterways constructed under this section shall be public waterways," and allows the department to condition permits as it finds necessary to "protect public health, safety, welfare, rights and interest and to protect private rights and property."
Section 236.16 sets forth mandatory layout requirements for subdivision plats, specifying minimum lot width, area and street width. Section 236.16 (3) requires subdivisions abutting navigable lakes or streams to provide public access to the water as follows:
 (3) LAKE AND STREAM SHORE PLATS. All subdivisions abutting on a navigable lake or stream shall provide public access at least 60 feet wide providing access to the low watermark so that there will be public access, which is connected to existing public roads, at not more than one-half mile intervals as measured along the lake or stream shore except where greater intervals and wider access is agreed upon by the department of natural resources and the department [of development], and excluding shore areas where public parks or open-space streets or roads on either side of a stream are provided. No public access established under this chapter may be vacated except by circuit court action. This subsection does not require any local unit of government to improve land provided for public access.
Your question concerns the interplay between sections 30.19 and236.16 (3) and, in essence, asks whether proximity to navigable water converts what would ordinarily be a private lake into a public waterway.
In 64 Op. Att'y Gen. 146 (1975), my predecessor determined that section 236.16 (3) does not apply to artificial lakes on private land created by the damming of a non-navigable stream, but specifically limited his opinion to situations not reached by section 30.19. He concluded, 64 Op. Att'y Gen. at 149, "[i]n this instance, to require public access to entirely artificial lakes where the common law confers no public rights would abrogate the common law." of course, the difference between the facts you pose and the 1975 opinion is the intervention of section 30.19 (5), which does abrogate the common law by declaring artificial waterways "public" if they connect to or are constructed within 500 feet of a navigable stream. I must next consider the extent to which the "public waterway" designation alters the private owner's property rights, and ultimately, *Page 318 
whether the department may condition a permit on the owner's provision of "public access" to the water.
As a starting point for this analysis, I note that Wisconsin has long recognized an expansive definition of waters protected under the public trust doctrine established by Wis. Const. art. IX, § 1. Under this doctrine, the state holds the beds of all navigable waters in trust for its citizens. Although the original purpose of the trust doctrine was to promote commercial navigation, the Wisconsin Supreme Court has expanded it to protect the public's use of navigable waters for purely recreational and nonpecuniary purposes. State v. Bleck,114 Wis.2d 454, 465, 338 N.W.2d 492 (1983); Muench v. Public ServiceComm., 261 Wis. 492, 53 N.W.2d 514 (1952). Natural, navigable waters of this state are thus impressed with the public trust, and all citizens enjoy access to and the full use of these waters on an equal footing. Moreover, private individuals cannot secure title to a lakebed because that title belongs to the state. Statev. Bleck, 114 Wis.2d at 462.
At the other end of the spectrum, our supreme court has held inMayer v. Grueber, 29 Wis.2d 168, 176, 138 N.W.2d 197 (1965), that the beds of artificially-created lakes do not belong to the state:
 In the case of artificial bodies of water, all of the incidents of ownership are vested in the owner of the land. An artificial lake located wholly on the property of a single owner is his to use as he sees fit, provided, of course, that the use is lawful.
On the resolution of private versus public lakebed ownership, the facts you pose fall somewhere in the middle. The lakebeds themselves are on private land, yet the close proximity to navigable water which triggers the operation of section 30.19
suggests that it is the connection or merging of shared waters that makes water a "public" resource.[1] Two Wisconsin cases further refine the boundaries of private and public lakebed ownership, and together suggest a result that protects public rights yet does not deprive the owner of a property interest.
In Haase v. Kingston Co-operative Creamery Asso., 212 Wis. 585,589, 250 N.W. 444 (1933), the supreme court held that an artificial enlargement of a previously non-navigable stream does not confer public rights in the water, placing that case on theMayer v. Grueber *Page 319 
side of the ledger. In an earlier case, however, the court held that public rights attach to the increased surface water created by the artificial enlargement of a previously natural and navigable lake. Mendota Club v. Anderson and another,101 Wis. 479, 493, 78 N.W. 185 (1899). Even though the public was entitled to the use of the newly-created surface water, ownership of the new lakebed remained in the private owner and did not transfer to the state. The court reached this result with some rather pragmatic imagery:
 Certainly, persons navigating the lake cannot be required or expected to carry with them a chart and compass and measuring lines, to determine whether they are at all times within what were the limits of the lake prior to the construction of the dam.
Thus, according to Mendota Club, it is possible under Wisconsin law to retain the underlying private ownership of the lakebed even though public rights attach to the new surface water. In my opinion, the facts you present are very close to the Mendota Club
case: by virtue of section 30.19, the creation of an artificial lake connected or in close proximity to a navigable waterway creates public rights to use the surface water even though the artificial lakebed remains in private ownership. Support for this result appears in section 30.19 (5) itself, which declares that artificial waterways created under that section are "public" — but does not state that title to the bed vests in the state. In turn, the right to use a public waterway necessarily implies public access, since without it the right is meaningless.
Section 30.19 (1)(a) requires a permit not only when an artificial waterway actually connects with an existing navigable water, but also when any part of the artificial waterway is located within 500 feet of the ordinary high water mark of a navigable water body. The statute does not reveal the basis for the 500-foot limit, but Wisconsin cases suggest that the state has a valid police-power purpose in regulating areas located in close proximity to navigable waters as well as connected waterways. In Just v. Marinette County, 56 Wis.2d 7,201 N.W.2d 761 (1972), the court upheld a shoreland zoning ordinance which restricted the alteration of lands within 1000 feet of the ordinary high water mark of a navigable lake, pond or flowage. The court reasoned that the special relationship between lands within the 1000-foot buffer zone and the contiguous waterway warrants public trust protection: *Page 320 
 What makes this case different from most condemnation or police power zoning cases is the interrelationship of the wetlands, the swamps and the natural environment of shorelands to the purity of the water and to such natural resources as navigation, fishing, and scenic beauty.
Just v. Marinette County, 56 Wis.2d at 16-17.
The court's recognition of a valid police-power basis for regulating lands in close proximity to navigable waters lends solid justification to the 500-foot limit in section 30.19
(1)(a). In effect, even where an artificial waterway is not connected to a navigable waterway, close proximity creates a presumption of hydrologic connection. The supreme court reaffirmed its Just v. Marinette County police-power analysis inM I Marshall Ilsley Bank v. Town of Somers, (slip op. at 14-16, November 4, 1987). Thus, the special relationship between navigable waters and lands adjacent to them provides ample basis for the 500-foot limit established in section 30.19 (1)(a).
I am aware that recent United States Supreme Court cases consider the issue of whether conditioning property development on the grant of public access constitutes a taking in violation of the Just Compensation Clause of the fifth amendment.[2] InNollan v. California Coastal Com'n, 107 S.Ct. 3141 (1987), the Supreme Court invalidated a public easement condition imposed upon a coastal development permit. The Court repeated earlier holdings that "land use regulation does not effect a taking if it `substantially advance[s] legitimate state interests' and does not `den[y] an owner economically viable use of his land,'"107 S.Ct. at 3146. In the Nollan case, however, the Court could not identify a legitimate state interest sought to be advanced by the lateral shoreline easement across the Nollan's property to enable the public to travel from one public beach to another. For example, the Court noted that it would see no problem in requiring an easement to permit the public to view the beach if preserving the public's view of the ocean were the state's asserted interest. "In short, unless the permit condition serves the same governmental purpose as the development ban, the building restriction is not a valid regulation of land use but `an out-and-out plan of extortion.'" 107 S.Ct. at 3148. *Page 321 
The public access condition established by section 236.16 (3) easily meets the test established in Nollan v. California CoastalCommission. The purpose of a public access requirement is to protect the public's state constitutional right to use public waterways, and access is the sine qua non to the enjoyment of that right. It makes no difference how the waterway became public, whether by operation of law or through connection to a navigable water: the public access condition assures the public's right to use state waterways. The "legitimate state interest," therefore, is the protection of public rights in water, and, unlike the mandated easement in Nollan, requiring developers to provide public access to the shore advances that interest.
In Kaiser Aetna v. United States, 444 U.S. 164 (1979), the Court held a governmental public access requirement to a pre-existing private pond to be a taking. In that case, however, the Court emphasized that under Hawaii law the pond had always been private property notwithstanding its connection to navigable water. More significantly, the Court noted that legitimate takings cases arise only where there is an interference with an "`economic advantage' that has the law back of it." Kaiser Aetna,444 U.S. at 178. In Kaiser Aetna, the developers owned the pond and had exclusive access to it, at least until the government intervened and (after the owners had made costly improvements) declared that the developers must now provide public access. In contrast, under the facts you pose, the developer under section30.19 has no "right" to create a lake within 500 feet of public waters, where it presumably would impact the quality and quantity of existing public waters. The Kaiser Aetna court acknowledged:
 We have not the slightest doubt that the Government could have refused to allow such dredging on the ground that it would have impaired navigation in the bay, or could have conditioned its approval of the dredging on petitioners' agreement to comply with various measures that it deemed appropriate for the promotion of navigation.
Kaiser Aetna, 444 U.S. at 179.
Under section 30.19 (4) and (5), the state has sufficient authority to deny the developer a permit in the first place without causing a taking. Thus, even under Kaiser Aetna the state certainly may condition its section 30.19 permit on providing public access to a *Page 322 
newly-created lake which exists in close proximity to and may have impacts on existing public waters.
Accordingly, an artificial waterway connected with or located within 500 feet of a navigable waterway is a public waterway to which the department may require public access. If this requirement is imposed as a condition of a section 30.19 permit for the enlargement of waterways, it is not a governmental taking under the rationale of Kaiser Aetna and Nollan because the owner has not lost an essential element of a pre-existing property interest and the condition bears a reasonable relationship to the state's protection of public waters.
DJH:MS
[1] There is no helpful legislative history to aid in construction of section 30.19.
[2] "[N]or shall private property be taken for public use, without just compensation." Article V, Amendments to the United States Constitution.
 *Page 1