STATE of Wisconsin, Plaintiff-Respondent,

v.

Martin C. BLECK, Defendant-Appellant-Petitioner.
[Case No. 82–685.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Bryan J. KELENY, Defendant-Appellant-Petitioner.
[Case No. 82–686.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

William B. PRINCE, Defendant-Appellant-Petitioner.
[Case No. 82–687.]

Supreme Court

*Nos. 82–685, 82–686, 82–687.*
*Argued September 6, 1983.—Decided October 4, 1983.*

(Also reported in 338 N.W.2d 492.)

For the defendants-appellants-petitioners there were joint briefs by *Charles A. Bleck*, Monona, *Bryan J. Keleny*, pro se, and *William B. Prince*, pro se, and oral argument by *Mr. Bleck*.

For the plaintiff-respondent there was a brief by *Frederick J. Erhardt*, and oral argument by *Jac Heitz*, assistant district attorneys for Dane county, Madison.

WILLIAM A. BABLITCH, J.   This is a review of an unpublished decision of the court of appeals affirming judgments of the circuit court for Dane county, Honorable Moria Krueger, Judge.  Martin Bleck, Bryan Keleny and William Prince (petitioners) were convicted of violating sec. 30.15(1)(d), Stats., which provides that anyone who constructs or places any structure or deposits any material in navigable waters in violation of sec. 30.12 or 30.13, is subject to a forfeiture not to exceed $50.

The issues presented for review are:

1) What are "navigable waters" within the meaning of secs. 30.12 and 30.15, Stats., for the purpose of establishing the state's jurisdiction under those statutes?

2) Is sec. 30.12, Stats., applicable to the petitioners' placement of a water ski jump on the bed of a navigable lake?

3) Does the application of sec. 30.12, Stats., to the petitioner's placement of a water ski jump that is secured to the bed of a navigable lake violate the public trust doctrine?

4) Does sec. 30.12, Stats., violate the equal protection guarantees of the United States or Wisconsin Constitutions?

We conclude that "navigable waters" under secs. 30.12 and 30.15, Stats., for the purpose of establishing the state's jurisdiction, are waters that are navigable in fact. We also conclude that sec. 30.12 is applicable to the petitioners' placement of the ski jump. Finally, we conclude that sec. 30.12 and its application to the petitioners neither violates the public trust doctrine nor denies the petitioners equal protection of the law. We affirm the decision of the court of appeals.

In the spring of 1980, the petitioners placed a water ski jump on Bass Lake, which is located in Dane county. The ski jump measured twenty-two feet by fourteen feet by six feet, and either rested on the lake bed or was secured to the lake bottom by ropes connected to four sixteen-gallon drums filled with concrete.

In May, 1980, the petitioners, who are not riparian owners, applied to the department of natural resources (DNR) for a permit to place the ski jump on Bass Lake, pursuant to sec. 30.12, Stats. Sec. 30.12 1979–80, provided in relevant part:[1]

"**Structures and deposits in navigable waters prohibited; exceptions; penalty.**

"(1) GENERAL PROHIBITION. Except as provided under sub. (4), unless a permit has been granted by the de-

---

[1] Section 30.12(2), Stats. 1979–1980, was repealed in part, and amended and renumbered in part by ch. 226, Laws of 1981, effective April 27, 1982.

partment pursuant to statute or the legislature has otherwise authorized structures or deposits in navigable waters, it is unlawful:

"(a)  To deposit any material or to place any structure upon the bed of any navigable water where no bulkhead line has been established; or

"(b)  To deposit any material or to place any structure upon the bed of any navigable water beyond a lawfully established bulkhead line.

"(2) PERMITS TO PLACE STRUCTURES OR DEPOSITS IN NAVIGABLE WATERS.  (a) The department may, upon application and after notice and hearing, grant to any riparian owner a permit to build or maintain for his own use a structure otherwise prohibited by statute, provided such structure does not materially obstruct navigation or reduce the effective flood flow capacity of a stream and is not detrimental to the public interest."

The petitioners' application was accompanied by a letter from a riparian owner, who advised that he owned property on Bass Lake and had given the petitioners permission to have access to the lake across his property and to dock their boat adjacent to his land.  The owner did not, however, individually apply for a sec. 30.12, Stats., permit.

DNR rejected the application because it was not made by a riparian owner, as required by sec. 30.12, Stats.  The petitioners left the ski jump on Bass Lake during the summer of 1980, even though DNR had not issued a permit.  On September 17, 1980, a warden from DNR observed the ski jump still on the lake.  He issued citations to the petitioners pursuant to sec. 30.15(1)(d) for violation of sec. 30.12.

After a trial to the circuit court, the court found the petitioners guilty of violating sec. 30.15(1)(d), Stats., and imposed a forfeiture of $50 on each.  The court found that Bass Lake is a navigable lake within the meaning of sec. 30.10(1).  The court also determined that sec. 30.12 is applicable to the petitioner's ski jump, and it

concluded that sec. 30.12 did not violate the public trust doctrine or the equal protection guarantees of the Wisconsin and United States Constitutions.

The petitioners appealed to the court of appeals, which affirmed the circuit court. The petitioners filed a petition for review, which we granted.

*State's Jurisdiction Under Sections 30.12 and 30.15, Stats.*

The petitioners assert that "navigable waters" for purposes of the state's jurisdiction under secs. 30.12 and 30.15, Stats., are waters that are both navigable in fact and "public" as opposed to artificial bodies of water created on private lands. The petitioners contend that the state must prove both that the body of water is navigable in fact and that it is public to establish its jurisdiction under those statutes.

The state asserts that "navigable waters" for purposes of establishing its jurisdiction under secs. 30.12 and 30.15, Stats., are waters that are navigable in fact. The state contends that once it proves navigability in fact, the petitioners' have the burden to persuade by the evidence that the body of water is a private, artificial water in order to defeat the state's jurisdiction. We agree.

We hold that the term "navigable waters" within the meaning of secs. 30.12 and 30.15, Stats., for the purpose of establishing the state's jurisdiction, are waters that are navigable in fact. Once the state has proven that the body of water is navigable in fact, it has established its jurisdiction under those statutes.

We reach this holding by reference to sec. 30.10, Stats., which sets forth general declarations of navigability, and provides in pertinent part:

"(1) LAKES. All lakes wholly or partly within this state which are navigable in fact are declared to be navigable and public waters, and all persons have the

same rights therein and thereto as they have in and to any other navigable or public waters.

"(2) STREAMS. Except as provided under sub. (4) (c), all streams, sloughs, bayous and marsh outlets, which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam, bridge or other obstruction shall be made in or over the same without the permission of the state."

The circuit court found, and petitioners concede, that Bass Lake is navigable in fact. Once that fact is established, the lake must then be considered a navigable and public water under sec. 30.10. The state therefore established its regulatory and enforcement jurisdiction under secs. 30.12 and 30.15, because sec. 30.12 authorizes the state to regulate structures on the beds of navigable waters, and sec. 30.15 authorizes the state to enforce violations of sec. 30.12. Navigability in fact having been proved, secs. 30.10 (1) and (2) make it an inescapable conclusion that the body of water is a navigable and public water.

We also hold that one who objects to the state's jurisdiction under secs. 30.12 and 30.15, Stats., on the basis that the body of water over which the state is asserting jurisdiction is an artificial water created on private land has the burden of persuasion on that fact by a preponderance of the evidence.

The general question of allocating burden of proof was addressed in *State v. McFarren,* 62 Wis. 2d 492, 499–503, 215 N.W.2d 459 (1974). In *McFarren,* this court cited Dean Charles T. McCormick's discussion of factors involved in allocating the burden of proof, and listed the following factors to be considered in determining the burden:

"(1) 'the natural tendency to place the burdens on the party desiring change,'

" . . .

"(2) 'special policy considerations such as those dis-favoring certain defenses,'

"(3) 'convenience,'

" . . .

"(4) 'fairness' ", which involves the consideration of two factors: "(a) proof of exceptions; and (b) proof of negatives.

" . . .

"(5) 'the judicial estimate of the probabilities' . . . the risk of the failure of proof may be placed upon the party who contends that the more unusual event has oc-curred.' " 62 Wis. 2d at 499–503, citing McCormick, *Evidence* (2d ed.), p. 787, sec. 337.

The application of these factors demonstrates that in cases arising under secs. 30.12 and 30.15, Stats., the burden of proving the artificiality of a body of water appropriately rests with the party asserting it.

In this case, the first factor favors placing the burden on the state because it seeks to enforce secs. 30.12 and 30.15, Stats., against the petitioners. The second factor is inapplicable, as there is no reason why a defense of artificiality should be disfavored.

The third, fourth, and fifth factors favor placing the burden on the petitioners. Factor three relates to convenience and access to proof. Because the state does not regulate artificial bodies of water, the state asserts that it has no documentation concerning the origins of any artificial water. This kind of documentation, when available, is available to any party seeking it.

The fourth factor provides that one who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception. Sec. 30.10(1), Stats., only requires that lakes be navigable in fact to be considered navigable and public. Sec. 30.12 applies to navigable waters. The petitioners' assertion that Bass Lake is artificial and private is an exception to

the general rule, evidenced in sec. 30.10(1), that lakes navigable in fact are navigable and public, and therefore subject to the state's jurisdiction.

The fifth factor favors placing the burden on the party who contends that the more unusual event has occurred. As of 1981, there were 14,927 inland lakes in this state.[2] The court of appeals' decision indicates that during oral argument before that court, the petitioners agreed that the overwhelming majority of the thousands of lakes in this state are natural, not artificial. Under this factor, the petitioners should have the burden of proving artificiality because that is the more unusual event.

The record reflects that the petitioners were aware of this burden and failed to meet it.[3] The petitioners introduced evidence at trial allegedly demonstrating that the bed of Bass Lake is privately owned. If Bass Lake is a navigable and natural lake, however, private individuals cannot secure title to the lake bed because that title belongs to the state. *Mayer v. Grueber,* 29 Wis. 2d 168, 173, 138 N.W.2d 197 (1965). The petitioners' evidence of private ownership is meaningless unless they also introduced evidence demonstrating that Bass Lake is an artificial body of water. There is no indication from the record that the petitioners introduced such evidence. The petitioners therefore did not satisfy their burden of proving the exception to the state's jurisdiction under secs. 30.12 and 30.15, Stats.

---

[2] Department of Natural Resources, *Wisconsin Lakes,* Pub. No. 7-3600(81), P. 1 (1981).

[3] At trial, the attorney representing petitioner Bleck stated, "Now, admittedly, as I understand the law, your Honor, there is a presumption that all navigable waters in this state are public bodies . . ." (No. 82-686, R. 11 at 6).

*Applicability of Sec. 30.12, Stats.*

The petitioners argue that sec. 30.12, State., is inapplicable to this case. They contend that if their seasonal anchoring of a ski jump violates sec. 30.12, then all similar recreational use of water facilities requiring seasonal mooring also fall within DNR's regulatory authority under that provision. The petitioners contend that sec. 30.12 as applied by DNR and interpreted by the circuit court and court of appeals, regulates the public's recreational use of navigable waters, which the statute was never intended to do.

We hold that sec. 30.12, Stats., is applicable to the petitioners' placement of the ski jump on the bed of a navigable lake.

Sec. 30.12, Stats., regulates the placement of structures on the beds of navigable waters. "Structure" is not defined for purposes of sec. 30.12. Sec. 990.01(1), relating to general rules of statutory construction, indicates that all words and phrases must be construed according to their common and approved usage. The common and approved meaning of a word can be ascertained by reference to a recognized dictionary. *Interest of B.M.,* 101 Wis. 2d 12, 18, 303 N.W.2d 601, 605 (1981).

Webster's Third New International Dictionary 2267 (1961) defines "structure" as "something constructed or built . . . something made up of more or less interdependent elements or parts . . ." The petitioners' ski jump measured twenty-two feet by fourteen feet by six feet, and either rested on the lake bed or was attached to the lake bottom by ropes connected to four sixteen-gallon drums. We conclude that the petitioners' ski jump constitutes a "structure" within the meaning of sec. 30.12, Stats. A determination whether other devices that are seasonally moored constitute "structures" subject to reg-

ulation under sec. 30.12 is not necessary to the resolution of this case, and we decline to speculate on that question.

We also find no merit in the petitioners' argument that sec. 30.12, Stats., is inapplicable because that provision was never intended to regulate the public's recreational use of the waters. Although the application of sec. 30.12 to the petitioners may have indirectly affected their use of Bass Lake, the statute was enforced because the petitioners had placed a structure on the lake bed, contrary to sec. 30.12. Any curtailment of the petitioners' use of the lake was simply an incidental effect of their unauthorized placement of a structure on the lake bottom.[4]

*Application of Sec. 30.12, Stats., and the Public Trust Doctrine*

The petitioners contend that the application of sec. 30.12, Stats., to their placement of the ski jump is contrary to the public trust doctrine because the result is that only riparian owners may seasonally moor recreational water facilities on the beds of navigable waters. The petitioners base this conclusion on the fact that only riparians may obtain permits under sec. 30.12. The petitioners argue that this result contravenes the public trust

---

[4] The petitioners also contend that the seasonal anchoring of recreational water facilities is subject to control under sec. 30.15 (1) (a), Stats. Sec. 30.15(1) (a), provides:

"**Penalty for unlawful obstruction of navigable waters.** (1) OBSTRUCTIONS PENALIZED. Any person who does any of the following shall forfeit not more than $50 for each offense:

"(a) Unlawfully obstructs any navigable waters and thereby impairs the free navigation thereof."

The petitioners appear to be arguing that the state should have charged them with violating that provision instead of sec. 30.15 (1) (d). Because we conclude that secs. 30.12 and 30.15(1) (d) apply to the petitioners' placement of the ski jump, we need not decide whether the state could or should have prosecuted under an alternative provision.

doctrine, which they contend is designed to protect the recreational use of navigable waters by *all* citizens.

The public trust doctrine is rooted in art. IX, sec. 1 of the Wisconsin Constitution.[5] Under this doctrine, the state holds the beds of navigable waters in trust for all of its citizens. *State v. Deetz,* 66 Wis. 2d 1, 11, 224 N.W.2d 407 (1974). Although the doctrine was originally designed to protect commercial navigation, it has been expanded to safeguard the public's use of navigable waters for purely recreational and nonpecuniary purposes. *See, e.g., Muench v. Public Service Comm.,* 261 Wis. 492, 53 N.W.2d 514 (1952).

The primary authority to administer this trust for the protection of the public's rights rests with the legislature, which has the power of regulation to effectuate the purposes of the trust. *See Ashwaubenon v. Public Service Comm.,* 22 Wis. 2d 38, 49, 125 N.W.2d 647 (1963). This court has recognized, however, that although the state holds the beds of navigable waters in trust for the public, it may authorize limited encroachments upon the beds of such waters where the public interest will be served. *Hixon v. Public Service Comm.,* 32 Wis. 2d 608, 618, 146 N.W.2d 577 (1966). In *Hixon,* this court stated that in legislative authorizations of fill or structures on the beds of navigable waters, such as those permitted under sec. 30.12, Stats., it is the legislature's function to

---

[5] Article IX, sec. 1 states: "The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor."

weigh all relevant policy factors to obtain the fullest public use of such waters and to provide for the convenience of riparian owners. *Hixon,* 32 Wis. 2d at 620.

Although the public trust doctrine safeguards interests of all members of the public in navigable waters, Wisconsin has also recognized the existence of certain common law rights that are incidents of riparian ownership of property adjacent to a body of water. *See, e.g., Mayer,* 29 Wis. 2d at 174; *Note, Riparian Water Law— Lakeshore Developments,* 1966 Wis. L. Rev. 172, 173. Such riparian rights include the use of the shoreline of the riparian owner's property, the reasonable use of the water, and the privilege to use a lake for bathing, swimming and boating. *Bino v. Hurley,* 273 Wis. 10, 16, 76 N.W.2d 571 (1956). A riparian who owns property abutting navigable lakes has been held to have a right of access to and from the lake upon his land, a right to build wharves and piers in aid of navigation, and a right to have water flow to his land without artificial obstruction. *See Boorman v. Sunnuchs,* 42 Wis. 233, 242 (1877); *Delaplaine v. C. & N.W. R'y Co.,* 42 Wis. 214, 215 (1877). The traditional distinction between riparian owners and nonriparians was noted in *The Attorney General ex rel. Askew v. Smith,* 109 Wis. 532, 85 N.W. 512 (1901), in which this court indicated that a riparian owner could construct a pier in a lake in aid of navigation if not prohibited by state law. The construction of a pier by a nonriparian, however, was considered to be an unauthorized invasion of the public's rights because the right to place a pier is merely an incident of riparian ownership. 109 Wis. at 540.

The common law distinction between riparians and nonriparians is also reflected throughout ch. 30, Stats., which governs navigable waters, harbors, and navigation, and of which sec. 30.12 is a part. Section 30.11 (4), pro-

vides that riparian proprietors may place solid structures or fill up to a bulkhead line established under sec. 30.11 (1). Section 30.13(1), permits riparian proprietors to construct a wharf or pier in a navigable water without a sec. 30.12 permit if certain conditions are satisfied. Neither provision grants the same right to non-riparians.

We conclude that the application of sec. 30.12, Stats., to the petitioners' placement of a ski jump does not violate the public trust doctrine. The fact that sec. 30.12 allows only riparians to apply for permits is simply an acknowledgment by the legislature of certain common law riparian rights that are incidents of their ownership of property abutting the water. Such rights, however, are still subject to the public's paramount right and interest in navigable waters. Under sec. 30.12(2), DNR may grant a permit to a riparian to place a structure only if that structure does not materially obstruct navigation, or reduce the effective flood flow capacity of a stream, or if it is not detrimental to the public interest. There is, therefore, no guarantee that a riparian owner who applies for a permit would obtain a permit under sec. 30.12 to place the type of ski jump the petitioners installed.

We also note that the function of sec. 30.12, Stats., is the regulation of the placement of fill or structures on the beds of navigable waters, not the regulation of the use and enjoyment of those waters. The only use of the water that was regulated in this case was one dependent upon a structure secured to the lake bottom. Through its enforcement of sec. 30.12, the state seeks not to preclude the petitioners' recreational use of Bass Lake but only to control the petitioners' unauthorized placement of a structure on the bed of a navigable lake. The fact that the state's regulation of the use of the lake bed

pursuant to its authority under sec. 30.12 may have an incidental effect on the petitioners' recreational use of the lake does not amount to a violation of the public trust doctrine.

*Equal Protection*

The petitioners also assert that the state's application and the court of appeals' interpretation of sec. 30.12, Stats., result in riparians receiving greater rights than non-riparians to the recreational use of the state's navigable waters. They contend that because only riparians may apply for permits under sec. 30.12, this creates an arbitrary and irrational classification, which denies non-riparians equal protection of the law as guaranteed by the United States[6] and Wisconsin[7] Constitutions.

Although the state's application and the court of appeals' interpretation of sec. 30.12, Stats., in this case may have the incidental effect of denying the petitioners certain use of Bass Lake, the statute was only applied because the petitioners placed an unauthorized structure on the lake bed. Under sec. 30.12, the petitioners could not obtain a permit authorizing the placement of the structure because they are nonriparians. Because sec. 30.12 on its face creates a classification between riparians and nonriparians, the petitioners' equal protection challenge is actually to the statute itself and not, as the petitioners claim, to the judicial interpretation and agency application of it.

If a statutory classification does not involve a suspect class or a fundamental interest, it will be sustained if there is any rational basis to support it. *See State v. Hart,* 89 Wis. 2d 58, 64–65, 277 N.W.2d 843 (1979).

---

[6] U.S. Const., Amend. 14.

[7] Sec. 1, Art. I, Wis. Const.

Under those circumstances, equal protection is denied only where the legislature has made an irrational or arbitrary classification. *Id.*

Although the petitioners contend that they have a constitutionally recognized right to the recreational use of public waters, they do not argue that they have a fundamental right to place structures on the beds of those waters. There is no indication that the public trust doctrine creates a fundamental right for any member of the public to place structures on the beds of navigable waters that facilitate the recreational use of those waters. Because sec. 30.12, Stats., does not involved a suspect classification or a fundamental right, we must determine whether there is any rational basis to support the statutory classification. *See Hart.* The basic test is not whether some inequality results from the classification, but whether there is a reasonable basis justifying the classification. *Omernik v. State,* 64 Wis. 2d 6, 19, 218 N.W.2d 734 (1974).

We hold that there is a rational basis to support the classification established in sec. 30.12, Stats., and that the statute does not deny the petitioners' equal protection of the law.

As previously noted, sec. 30.12, Stats., reflects the legislature's recognition that under the common law, riparian owners have certain well established rights that are incidents of their ownership of property adjacent to the water. Under the public trust doctrine, these rights are subject to the public's right to use navigable waters, and a riparian owner will not receive a sec. 30.12 permit if the structure materially obstructs navigation or infringes on the public interest. The legislature was confronted with the difficult task of finding a way to safeguard the public interest in the use of navigable waters without totally abrogating well established riparian rights. The

classification embodied in sec. 30.12 is a rational way of accommodating both interests, since it recognizes the tradition of certain rights unique to riparian owners, yet ensures that riparians will not be able to place structures on the beds of navigable waters if they are detrimental to the paramount public interest.

The state also has an interest in ensuring that structures placed on the beds of navigable waters are maintained in a condition that will not obstruct navigation, interfere with the public's right to use navigable waters, or threaten public safety. The legislature may well have assumed that one who owns property adjacent to a navigable body of water on which a structure will be placed may have greater interest in and opportunity to observe the need for maintenance of that structure than one who does not live near the body of water. The legislative decision limiting applicants for sec. 30.12 permits to riparians is rationally related to the legitimate governmental objective of safeguarding the public's interest in and use of the state's navigable waters.

In resolving the equal protection challenge presented in this case, the test is not whether this court agrees with the distinction drawn in sec. 30.12, Stats., or whether the legislature could have drawn more reasonable distinctions. The test is whether there is a reasonable and practical ground for the classification made pursuant to the police power. If there is a reasonable basis for the classification, we will sustain it even though some other classification might appear to be more in accord with the general welfare. *See State v. Jackman,* 60 Wis. 2d 700, 705, 211 N.W.2d 480 (1973). We conclude that there is a reasonable basis for the classification in sec. 30.12.

*By the Court.*—The decision of the court of appeals is affirmed.