Francis KLINGEISEN, Petitioner-Respondent,†

v.

State of Wisconsin DEPARTMENT OF NATURAL
RESOURCES, Respondent-Appellant.

Court of Appeals

*No. 90–2616. Submitted on briefs April 29, 1991.—Decided
June 26, 1991.*

(Also reported in 472 N.W.2d 603.)

†Petition to review denied.

923

On behalf of respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *John S. Greene,* assistant attorney general.

On behalf of petitioner-respondent, the cause was submitted on the brief of *Patrick A. Dewane, Jr.* of *Dewane, Dewane, Kummer & Lambert* of Manitowoc.

Before Brown, Scott and Anderson, JJ.

ANDERSON, J. The Wisconsin Department of Natural Resources (DNR) appeals from an order of the circuit court reversing the DNR's determination that Francis Klingeisen violated sec. 30.121, Stats. The DNR ordered Klingeisen to remove his boathouse located on his property and along a channel in Shu-Nel Point, Door County, Wisconsin.[1] The issue on appeal is whether the DNR has jurisdiction to regulate boathouses located on artificial, navigable channels when the channels are connected to natural, navigable bodies of water. This court concludes that the DNR has jurisdiction because the channels are public, and we reverse the trial court's order and remand.

Shu-Nel Point peninsula was platted in 1928. There were no navigable waterways on Shu-Nel Point until the 1940s and 1950s when a channel and three lagoons were constructed. There is a principal east-west channel that connects to Lake Michigan's Green Bay, with three connecting lagoons that run north-south. Navigation has occurred on these artificial waterways since they were constructed.

Klingeisen purchased a lot on Shu-Nel Point in 1972. A boathouse was located on his property and along the channel. In 1987, Klingeisen received a quitclaim deed "from the water's edge to the center of all lagoons, all private channels, and all channels . . . in the plat of Shu-Nel Point." The deed stated that "the public shall have perpetual access over said waters."

---

[1] We will refer to the channel and lagoons collectively as a "channel."

Klingeisen rented out the boathouse. Upon his request, the DNR issued a certification authorizing him to make repairs to the boathouse. Pursuant to sec. 30.121(3), Stats., Klingeisen was prohibited from spending more than fifty percent of the fair market value of the boathouse on the repairs. At the time of the request, the fair market value of the boathouse was $2300. After the repairs began, a DNR employee confirmed that the repairs would exceed the repair expense limitation and a "Notice of Investigation and Hearing" was served on Klingeisen.

The examiner concluded that the channel was navigable pursuant to sec. 30.10, Stats., and that the boathouse repair violated sec. 30.121(3), Stats., because the repairs would exceed the statutory limitation. The examiner ordered Klingeisen to remove the boathouse.

Klingeisen sought review of the DNR's decision in the circuit court. He argued that the DNR lacked jurisdiction under secs. 30.10 and 30.121, Stats., to regulate boathouses located on artificial waterways, and that the repairs to the boathouse would not exceed fifty percent of the fair market value of the boathouse. The trial court upheld the examiner's findings that the cost of the repairs would exceed the limit imposed by law, but held that the DNR lacked jurisdiction to regulate boathouses on artificial waterways.

■ Questions relating to application of statutes are labeled questions of law, and the black-letter rule is that a court is not bound by an agency's conclusion of law. *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). In some cases, however, deference is appropriate. *Drivers, Local 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). Because a question of law is involved and there is no evidence in the

record or by reported cases of the DNR's special expertise in determining jurisdiction in this case of first impression, the weight to be afforded the DNR's legal conclusion is no weight at all. *See id.* at 84, 452 N.W.2d at 372. Here, the standard of review must be *de novo.* This does not mean that the DNR was incorrect. Rather, we give the jurisdictional issue a new look, giving full deference to the DNR's factual findings. *See id.*

■

The DNR has jurisdiction over the waterway if the waterway is navigable and public. *See State v. Bleck,* 114 Wis. 2d 454, 461–62, 338 N.W.2d 492, 496 (1983). The DNR does not have jurisdiction if the waterway is artificially created on private land. *See id.* at 459–60, 338 N.W.2d at 495. There is no dispute that the channel in this case is navigable and artificially created. The facts establish that the public has free access to the channel, but that the bed of the channel remains in private ownership. The resolution of the issue before us rests on whether the channel is public for purposes of DNR jurisdiction. We conclude that the channel is public and that the DNR has jurisdiction.

■

The waters are public because the channel, although artificially created, is connected to and maintained by the waters of Green Bay. The channels have no existence independent of Green Bay. Wisconsin courts have addressed the same situation in early cases where a navigable waterway was artificially raised over private property. The principle from these cases is well settled: If the volume or expanse of navigable waters is increased artificially, the public right to use the water is increased correspondingly. *See Village of Pewaukee v. Savoy,* 103 Wis. 271, 277, 79 N.W. 436, 438 (1899), *modified, Haase v. Kingston Coop. Creamery Ass'n,* 212 Wis. 585,

588–89, 250 N.W. 444, 445 (1933). *See also Mendota Club v. Anderson,* 101 Wis. 479, 493, 78 N.W. 185, 190 (1899); *Weatherby v. Meiklejohn,* 56 Wis. 73, 76–78, 13 N.W. 697, 697–99 (1882).[2] Green Bay, clearly a navigable waterway, was artificially expanded over privately owned land when the channels were constructed. Thus, the public has a right to use the waters and the waters are public.

Furthermore, the channel is analogous to navigable streams in which the riparian owner holds title to the thread (the geographical center) of the stream. *Mayer v. Grueber,* 29 Wis. 2d 168, 173, 138 N.W.2d 197, 202 (1965). In such cases, the owner has no property rights in the particles of water flowing over the bed of the waterway and cannot maintain a trespass action against a member of the public who uses the water flowing over the owner's land. *See Willow River Club v. Wade,* 100 Wis. 86, 102–03, 76 N.W. 273, 276–77 (1898). Because the owners along the channel do not own the water flowing from Green Bay, they cannot rightfully exclude the public from using the water over their land. *See, e.g., Diana Shooting Club v. Husting,* 156 Wis. 261, 271–73, 145 N.W. 816, 819–20 (1914). Therefore, we conclude that the channel is public, and the DNR has jurisdiction

---

[2]If, however, a nonnavigable waterway is raised artificially so as to make it navigable, the public may gain rights in the water only if the public's use has continued over an extended period of time. *See, e.g., Haase v. Kingston Coop. Creamery Ass'n,* 212 Wis. 585, 588–89, 250 N.W. 444, 445 (1933); *Smith v. Youmans,* 96 Wis. 103, 111, 70 N.W. 1115, 1117 (1897). This is not the case before us because we are confronted with a navigable waterway, Green Bay, which was artificially raised over private property.

over the channel.[3] *See Bleck,* 114 Wis. 2d at 462, 338 N.W.2d at 496.

Klingeisen argues, however, that even though the public has access to the water, it does not follow that the owners of the land underlying the water are subject to DNR jurisdiction. We disagree. Because the channel is public, the right of the public to use the water cannot be consistently separated from the regulatory authority to protect and promote the public's interest in the water. It is the public right to use the water that renders regulatory control necessary to protect the public interest. Title is entirely subordinated to and consistent with the rights of the state to secure and preserve to the people the full enjoyment of navigability and the rights incident thereto. *Diana Shooting Club,* 156 Wis. at 269, 145 N.W. at 819.

The state has the power, as a trustee for the public, to regulate public uses of navigable waters to best accomplish and promote the public interest. *Merwin v. Houghton,* 146 Wis. 398, 409, 131 N.W. 838, 841 (1911). The unavoidable conclusion that the waters are subject to DNR jurisdiction is necessary to assure the realization of the purposes of the public trust doctrine: to promote navigation and to protect and preserve those waters for fishing, recreation and scenic beauty. *See id.* at 409–10, 131 N.W. at 841; *Muench v. Public Service Comm'n,* 261 Wis. 492, 511–12, 53 N.W.2d 514, 522 (1952). The public trust doctrine, to be effective, must also extend to public, artificial waters that are directly and inseparably connected with natural, navigable waters.

---

[3]Based on these principles, we do not address the impact of the deed granting public access to the channel.

Klingeisen argues that the only basis for the DNR's jurisdiction is sec. 30.19(5), Stats. Section 30.19(5) provides that a permit issued under sec. 30.19 shall provide that all artificial waterways connected to navigable waterways shall be public waterways. He reasons that because the section came into existence in 1961, and the channel was built before 1961, there is no basis for the DNR's jurisdiction unless the public gained rights by prescription, reservation or dedication.[4] He concludes that because there is no jurisdiction under sec. 30.19, then the DNR cannot enforce sec. 30.121, Stats., against him. Klingeisen argues that the reason subsec. (5) was enacted was because the common law did not allow state jurisdiction over the channel.[5] Otherwise, he reasons, there would be no purpose in creating the section.

We agree that sec. 30.19, Stats., does not apply because the channel was constructed before the effective date of the section. We hold, however, that it is inconsequential because the DNR has had common law authority over waterways of this sort since before the statute's enactment. It is fundamental that a statute should be construed in harmony with the common law, *State ex rel. Schwenker v. District Court,* 206 Wis. 600, 604, 240 N.W. 406, 408 (1932), unless a different construction is plainly expressed. *See Highway Trailer Co. v. Janesville Elec. Co.,* 187 Wis. 161, 179, 204 N.W. 773, 780 (1925). The statute did not claim to alter the common law. It

[4]He argues that the deed granted only public access, and it did not grant the DNR authority to regulate boathouses along the channel.

[5]Klingeisen asserts essentially the same argument for the proposition that sec. 30.01(4m), Stats., does not apply. Based on the common law analysis, we need not address the implications of sec. 30.01(4m).

simply aimed to ensure that developers are put on notice that artificially created waterways connected to public waterways are public. Therefore, we reject the argument that the enactment of sec. 30.19(5) indicates that there was not a common law basis for DNR jurisdiction.[6]

■■

Section 30.121, Stats., may be enforced against Klingeisen even though sec. 30.19, Stats., does not apply. The state has delegated its trustee duties to the DNR, *see* sec. 144.025(1), Stats., and has declared that one of its duties is to regulate boathouses. *See* sec. 30.121(6). Because the DNR has jurisdiction over the channel, it can enforce sec. 30.121 against Klingeisen.

■■

In the DNR's conclusions of law, it stated that the channel was public navigable water within the declarations of navigability stated in sec. 30.10, Stats. Klingeisen argues that because the channel in dispute does not specifically fall within the declarations, the DNR does not have jurisdiction over the channel. There is nothing in sec. 30.10 to indicate that it is the exclusive source for declaring navigability. The absence of a specific declaration addressing this type of water is not detrimental. In the absence of a legislative declaration, navigability is a question of fact. *Angelo v. Railroad Comm'n,* 194 Wis. 543, 552, 217 N.W. 570, 574 (1928). Navigability in fact is the basis for the state's regulatory and enforcement jurisdiction. *Village of Menomonee Falls v. DNR,* 140 Wis. 2d 579, 591, 412 N.W.2d 505, 510 (Ct. App. 1987). Although sec. 30.10 declares some waters navigable, it does not prevent other waters from being declared navigable. Once a body of water is found

---

[6]Furthermore, because sec. 30.19(5), Stats., does not apply, it is not being applied retroactively.

to be navigable and public, sec. 30.121, Stats., becomes effective.

We conclude that when the channels were constructed and were filled by the natural, navigable waters of Green Bay, the owners kept title to the land under the navigable waters with notice of the public trust and subject to the burdens created by it. *See Diana Shooting Club,* 156 Wis. at 272, 145 N.W. at 820. Therefore, we reverse the trial court.

*By the Court.*—Order reversed and cause remanded.