Jerome MOVRICH and Gail Movrich,
Plaintiffs-Respondents,

v.

David J. LOBERMEIER and Diane Lobermeier,
Defendants-Appellants.†

Court of Appeals

*No. 2015AP583. Submitted on briefs May 3, 2016.
—Decided November 29, 2016.*

2016 WI App 90

(Also reported in 889 N.W.2d 454.)

† Petition for review filed.

728

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Brian G. Formella* of *Anderson, O'Brien, Bertz, Skrenes & Golla, LLP* in Stevens Point.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Daniel F. Snyder* of *Slaby, Deda, Marshall & Reinhard & Writz LLP* in Phillips.

Before Curley, P.J., Kessler and Brash, JJ.

¶ 1. CURLEY, P.J. David J. Lobermeier and Diane Lobermeier (collectively, the Lobermeiers) appeal from a judgment entered in favor of Jerome Movrich and Gail Movrich (collectively, the Movriches), after a court trial, regarding the Movriches' right to install a dock and to access the Sailor Creek Flowage from their shoreline property. The Lobermeiers argue that the trial court erred in concluding the public trust doctrine allows the Movriches to install a dock extending from their property into the Sailor Creek Flowage and resting on the waterbed, and to access the Sailor Creek Flowage directly from their property.[1] To the contrary,

[1] Prior to the Movriches having filed their lawsuit against the Lobermeiers in Price County Circuit Court Case No. 2013CV78, David Lobermeier filed a small claims action against Robert D. McWilliams, who then joined numerous supplemental defendants, all of whom own waterfront property along the Sailor Creek Flowage and likewise sought a declaration allowing them to erect, maintain, and use a dock or pier extending from their respective properties into the Sailor Creek Flowage and that they could access the water directly from their respective properties. That case was eventually transferred from small claims court and was assigned to the circuit court in Price County Circuit Court Case No. 2013CV22. In an order filed November 21, 2013, the trial court granted the Movriches' motion to consolidate the two cases for pretrial preparation and for trial.

In their Notice of Appeal, the Lobermeiers indicated they were appealing the "Decision and Order" entered on February 2, 2015, in both the 2013CV22 and 2013CV78 cases. However, the Movriches filed a motion requesting we strike all references to the parties in the 2013CV22 case on the ground that the "sole judgment that is the subject of the pending appeal is that certain judgment entered in . . . [the] 13–CV-78 [case] in favor of [the Movriches] and against the . . . Lobermeier[s]." The Movriches also argued that the "judgment makes no reference to and does not purport to treat issues between the parties in the said Circuit Court Case No. 13–CV-22." We granted that motion in an order dated August 20, 2015. The

the Lobermeiers argue, because they own the bed of the Sailor Creek Flowage abutting the Movriches' waterfront property, they may prohibit the Movriches from taking such actions. The Lobermeiers also request that we withdraw the trial court's order restraining and prohibiting them from coming upon the Movriches' property, as well as that we reverse the trial court's judgment that costs and fees be taxed against them and instead find that such costs and fees should be taxed against the Movriches. For the following reasons, we agree with the trial court and affirm.

## BACKGROUND

¶ 2. This appeal concerns the respective rights of owners of waterfront and waterbed property on the Sailor Creek Flowage in Price County, Wisconsin (hereinafter, the Flowage). Due to the nature of the case, we begin with a brief review of the Flowage's history.

¶ 3. According to the Wisconsin Department of Natural Resources (DNR), the Flowage is presently "a 201 acre lake located in Price County . . . [with] a maximum depth of 8 feet," and "[v]isitors have access to the lake from a public boat landing."[2] Prior to the Flowage's existence, however, there was simply a Sailor Creek.

¶ 4. In or around 1941, the Town of Fifield, where the Flowage is located, proposed to construct, operate, and maintain a dam across Sailor Creek. A Deed of Flowage Rights executed on September 13, 1941, states

parties in the 2013CV22 case have not participated in this appeal, and we therefore address this appeal only as to the parties in the 2013CV78 case.

 [2] *See* http://dnr.wi.gov/lakes/LakePages/LakeDetail.aspx?wbic=2252200 (last visited on Nov. 21, 2016).

that "certain lands bordering upon [Sailor Creek] and its tributaries will be overflowed by reason of such maintenance and operation of said dam," and Margaret Hussmann, the landowner, granted and conveyed to the Town of Fifield, and its assigns and successors, "the perpetual right, privilege and easement to submerge, flood and/or raise the ground water elevation of such portion of the grantor's real estate hereinafter described as may be overflowed or affected by raising such water level, directly or indirectly, through the maintenance and operation of said dam . . . ." The deed does not purport to convey any interest in the land itself, and over time, the interest in the land she retained was transferred to various parties. Through a chain of title, interest in some of the land Ms. Hussmann initially retained eventually became part of the Sailor Creek Flowage Subdivision, where the Movriches' property is located, while another portion of that land was ultimately transferred to the Lobermeiers. This brings us to the course of events precipitating this appeal.

¶ 5. David Lobermeier and Gail Movrich are brother and sister. In 2006, the Movriches purchased waterfront property abutting the Flowage, and a dock extending from the property into the Flowage was present at that time. The Lobermeiers also own property on the Flowage; however, the Lobermeiers' property is an area of submerged land beneath the Flowage's waters. Although the Lobermeiers at one point also owned dry upland property, they have since sold that portion and now own, as relevant to this matter, only the submerged property.[3] The Lobermeiers own only a

---

[3] We hereinafter refer to the Movriches property as "upland" or "waterfront" property and to the Lobermeiers' property as the "waterbed" or "lakebed" property.

small portion of the Flowage waterbed, and part of their submerged property abuts the Movriches' upland waterfront property.

¶ 6. Gail Movrich testified at trial that upon acquiring their property, they made use of the Flowage in various ways, including fishing, mooring their boat to a dock, wading in the water, and kayaking, and they also allowed David Lobermeier and his friends and family to use the dock for fishing and for other purposes, such as mooring the Lobermeiers' boat. At trial, the Movriches offered excerpts of David Lobermeier's deposition testimony that confirmed the Movriches had allowed him to use their dock and that he had moored his boat there.

¶ 7. For a number of years, the Movriches and Lobermeiers got along well and there was no dispute concerning the Movriches' dock or access to the Flowage from their property. However, in approximately 2011 or 2012, the Movriches and Lobermeiers had a falling out—the parties do not provide any details other than to indicate it was unrelated to the Flowage —and at that time, the Lobermeiers began asserting that they, and they alone, have exclusive rights to the waterbed at issue. Thereafter, they demanded that the Movriches and other neighboring property owners remove their docks and cease use of the waterbed.[4]

¶ 8. Ultimately, the Movriches filed a lawsuit against the Lobermeiers seeking a declaration of their

---

[4] Letters introduced at trial indicate that in early 2012, the Lobermeiers granted at least some upland property owners permission to maintain placement of their respective docks. Later that year, however, the Lobermeiers sent letters withdrawing that permission and offered the upland owners an opportunity to purchase property rights in the waterbed for $3500.

riparian rights incident to their property ownership and their ability to access the Flowage and to install a pier or dock, as well as an injunction against the Lobermeiers preventing them from coming upon the Movriches' property and from interfering with the Movriches' rights. The trial court consolidated the Movriches' action with the previously pending lawsuit David Lobermeier had filed against other Flowage upland property owners,[5] and after a court trial, the trial court issued a decision and order explaining that the public trust doctrine allows the Movriches to access the Flowage and to install a pier or dock.[6] The court thereafter entered judgment against the Lobermeiers, and this appeal follows.

¶ 9. Additional facts will be developed below as necessary.

## ANALYSIS

¶ 10. On appeal, the Lobermeiers primarily challenge the trial court's conclusion that the public trust doctrine allows the Movriches to access the Flowage directly from their property and to erect, maintain, and use a dock or pier anchored on their real estate and that extends over the Flowage's waters and is supported either by flotation devices or posts resting on the Flowage bed. For the following reasons, we agree that the public trust doctrine permits the

[5] Price County Circuit Court Case No. 2013CV22. As explained in an earlier footnote, although the cases were consolidated, this appeal concerns only the Movriches' lawsuit against the Lobermeiers.

[6] The trial court's decision and order also referenced the parties in the Price County Circuit Court Case No. 2013CV22.

734

Movriches to access the Flowage from their property and to erect, maintain, and use a dock as set forth in the trial court's order.[7]

██

¶ 11. Our review requires a combination of discretionary and *de novo* review because we review both the trial court's factual findings and the trial court's application of law. We will not set aside a trial court's factual findings unless the findings are clearly erroneous. *See* Wis. Stat. § 805.17(2) (2013–14);[8] *see also M.Q. v. Z.Q.*, 152 Wis. 2d 701, 708, 449 N.W.2d 75. When reviewing the trial court's factual findings, we will "search the record for evidence to support findings reached by the trial court, not for evidence to support findings the trial court could have reached but did not." *See Noble v. Noble*, 2005 WI App 227, ¶ 15, 287 Wis. 2d 699, 706 N.W.2d 166. We assume the trial court made the findings of fact necessary to support its decision, and we accept any such implicit findings if supported by the record. *See Town of Avon v. Oliver*, 2002 WI App 97, ¶ 23, 253 Wis. 2d 647, 644 N.W.2d 260. Although we review the trial court's application of law *de novo,* we benefit from its analysis. *See City of Muskego v. Godec*, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992).

---

[7] On appeal, the Wisconsin Realtors Association sought leave to file a non-party brief, and we granted its motion in an order dated December 3, 2015. The Wisconsin Realtors Association's amicus brief generally presents the same arguments the Movriches present on appeal—that riparian owners have a common law right to install and use a pier or dock and to access the water where the adjacent waterbed is privately owned by another party and that the public trust doctrine grants the same rights—and we therefore do not summarize their arguments separately.

[8] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

## I. General principles concerning riparian rights and the public trust doctrine in Wisconsin.

¶ 12. After a court trial, the trial court concluded that the public trust doctrine allows the Movriches to access the Flowage from their waterfront property and to erect, maintain, and use a pier anchored on their property and extending into the Flowage. In concluding the public trust doctrine controls, the trial court did not explicitly discuss the apparent tension between the Movriches' asserted riparian rights and the Lobermeiers' property rights and how these rights are subordinate to the public trust doctrine. At trial, and again on appeal, the parties devote a significant portion of their respective briefs to this asserted tension. Having reviewed the applicable law, it is clear these concepts cannot be viewed in a vacuum. We therefore begin by setting forth the basic principles relevant to the public trust doctrine and riparian rights, followed by an explanation of our agreement with the trial court.

### A. The public trust doctrine.

¶ 13. "Wisconsin has a long tradition of 'protect[ing] our valuable water resources.' " *Rock-Koshkonong Lake Dist. v. DNR*, 2013 WI 74, ¶ 70, 350 Wis. 2d 45, 833 N.W.2d 800 (citation omitted; bracketing in original). Article IX, § 1 of the Wisconsin Constitution, which has its roots in the Northwest Ordinance with respect to navigable waters and incorporates its verbiage verbatim, provides that the State holds the navigable waters in trust for the public:

> The state shall have concurrent jurisdiction on all rivers and lakes bordering this state so far as such

rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.

Wis. Const. art. IX, § 1; *see also Rock-Koshkonong*, 350 Wis. 2d 45, ¶¶ 71, 73. "The public trust doctrine is premised upon the existence of 'navigable waters.'" *Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 76. Initially, whether a stream was navigable depended upon whether it had "the capacity to float logs to market" during at least part of the year; however, that test "has long since been replaced by the standard of *'navigable in fact for any purpose.'* " *Id.* (citation omitted). "If the volume or expanse of navigable waters is increased artificially, the public right to use the water is increased correspondingly." *Klingeisen v. DNR*, 163 Wis. 2d 921, 927, 472 N.W.2d 603 (Ct. App. 1991). The public trust doctrine therefore applies to flowages created by dams placed on navigable streams such as Sailor Creek. *See id.*

¶ 14. Wisconsin courts have "long held that the public trust in navigable waters 'should be interpreted in the broad and beneficent spirit that gave rise to it in order that the people may fully enjoy the intended benefits.'" *Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 72 (citation omitted). "Broadly interpreting the public trust has resulted in recognition of more than just commercial navigability rights. Protection now extends to 'purely recreational purposes such as boating,

swimming, fishing, hunting, . . . and . . . preserv[ing] scenic beauty.' " *Id.* (citation omitted; omissions and alteration in *Rock-Koshkonong*).

¶ 15. In Wisconsin, "[t]he public trust doctrine vests the ownership of land *under lakes*—i.e., lake beds—in the state." *Id.*, ¶ 78. "By contrast, the public trust doctrine in Wisconsin gives riparian owners along navigable streams a qualified title in the stream beds to the center of the stream, while the state holds the navigable waters in trust for the public." *Id.* "In reality, the state effectively controls the land under navigable streams and rivers without actually owning it." *Id.* "The rule is different with respect to the beds under streams in part because streams can change course, streams can become unnavigable over time, and navigable streams can be very narrow and shallow, so that state *ownership* of stream beds could be problematic and impractical." *Id.*, ¶ 82 (footnote omitted). "[T]he question of ownership is important because the public trust doctrine implicates state ownership or virtual state ownership—by virtue of its trust responsibility—of *land* under navigable waters." *Id.*, ¶ 84. Public trust jurisdiction is generally limited by the boundaries of the ordinary high-water mark. *See id.*, ¶ 91.

## B. Riparian owners and riparian rights.

¶ 16. Black's Law Dictionary defines "riparian" as meaning "[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake)." *Riparian,* Black's Law Dictionary (10th ed. 2014). "An individual who holds title to

land abutting a body of water is known as a riparian owner." *Berkos v. Shipwreck Bay Condo. Ass'n*, 2008 WI App 122, ¶ 10, 313 Wis. 2d 609, 758 N.W.2d 215.

¶ 17. "Riparian owners have certain rights, known as riparian rights, based on their ownership of shorefront property." *Id.* The rights afforded a riparian are well defined and "include the right to use the shoreline and have access to the waters, the right to reasonable use of the waters for . . . recreational purposes, and the right to construct a pier or similar structure in aid of navigation." *ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶ 57, 255 Wis. 2d 486, 648 N.W.2d 854. "A riparian owner is entitled to exclusive possession to the extent necessary to reach navigable water and to have reasonable access for bathing and swimming." *Id.*

¶ 18. "[T]he rights of a riparian owner are not dependent upon the ownership of the soil under the water, but upon his title to the banks." *Doemel v. Jantz*, 180 Wis. 225, 230, 193 N.W. 393 (1923). Thus, riparian rights "vary in accordance with the nature of the body of water," whether it be a stream, lake, or pond. *See Mayer v. Grueber*, 29 Wis. 2d 168, 173, 138 N.W.2d 197 (1965). "With respect to the ownership of the bed of the stream, a riparian owner owns to the thread [the geographical center] of the stream." *Id.* (brackets in *Mayer*). However, title under such circumstances is qualified and subject to the State's interests. *Id.* Where the body of water is a natural lake or pond, the owner of land abutting the water "owns to the water line only, since title to the submerged lands beneath a permanent body of natural water belongs to the state." *Id.* "An abutting property owner on a

739

natural lake, except for the right of access, has no more rights as a riparian than any other member of the public." *Id.* at 173–74. Our cases have long recognized, however, that "[t]he rights of riparian owners are subject to the public's right to use navigable waters provided under the public trust doctrine." *See, e.g., Berkos,* 313 Wis. 2d 609, ¶ 10.

¶ 19. With these principles in mind, we now turn to the current dispute—whether the Movriches may access the Flowage waters from their property and whether they may erect, maintain, and use a dock or pier anchored on their property at one end and extending into the Flowage at the other.

**II. The public trust doctrine allows the Movriches to access the Flowage from their property and to erect, maintain, and use a pier or dock extending from their property into the Flowage.**

¶ 20. Like the trial court, we conclude the Movriches may access the Flowage waters from their property and that they may likewise erect, maintain, and use a pier or dock extending from their property into the Flowage and anchored by posts at the bottom of the waterbed or secured by flotation devices. We reach this conclusion based on the interplay between the public trust doctrine and the property and riparian rights the parties assert. Because the Flowage is subject to the public trust doctrine and private property rights and riparian rights are subordinate to that doctrine, *see R.W. Docks & Slips v. State,* 2001 WI 73, ¶ 22, 244 Wis. 2d 497, 628 N.W.2d 781, our discussion focuses primarily on the public trust doctrine's application under the facts presented.

740

¶ 21. It is undisputed that the Lobermeiers own the submerged waterbed property adjacent to the Movriches' upland property and that the Lobermeiers do not own adjacent dry land. The Movriches do own dry upland property adjacent to the Lobermeiers' waterbed property, and the warranty deed filed in the Price County Register of Deeds Office on December 15, 2006, identifies the Movriches' property as:

> Lot One (1) of Sailor Creek Subdivision, being located in the Southeast Quarter (SE ¼) of the Southeast Quarter (SE ¼) and the Southwest Quarter (SW ¼) of the Southeast Quarter (SE ¼), Section Nineteen (19), Township Thirty-nine (39) North, Range One (1) East.

(Bolding omitted.) A surveyor's certificate regarding the Sailor Creek Subdivision admitted at trial provides a recitation of the subdivision's boundaries, which in part states "thence . . . 152 feet more or less to the shoreline of Sailor Creek Flowage; thence . . . along said shoreline . . . ." (Formatting altered.)

¶ 22. We initially note that the facts of this case are distinguishable from many other Wisconsin cases addressing the tension between the riparian rights of an upland riparian property owner and the property rights of an owner of an adjacent, privately owned waterbed because here, unlike in many of those cases, the Lobermeiers do not own the entire waterbed and neither the waterbed nor the Flowage itself are entirely within the boundaries of their property. *Cf. Mayer*, 29 Wis. 2d at 172–73, 176 (where private lake was entirely within the boundaries of the waterbed owner's property). Also unlike many of those cases, the public trust doctrine undeniably applies in this case.

¶ 23. Because there is no doubt that the public trust doctrine applies here, resolution of the issues

741

presented requires us to consider the Lobermeiers' and Movriches' competing property and riparian rights, respectively, in light of the public trust doctrine. As set forth below, viewing the issues presented in this manner reinforces our conclusion that the Movriches may access the Flowage and erect, maintain, and use a pier or dock anchored to their property and extending into the Flowage. To conclude otherwise would significantly limit the purpose and scope of the public trust doctrine, which we may not do. *See Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 72 (we broadly interpret the public trust doctrine " 'in the broad and beneficent spirit that gave rise to it *in order that the people may fully enjoy the intended benefits.*' " (citation omitted; emphasis added)).

¶ 24. Important to our consideration is that the public trust doctrine does not differentiate between natural and artificial waterways; rather, it applies to all "navigable waters." *See* WIS. CONST., art. IX, § 1. Where a navigable artificial waterway exists and the waterbed is privately owned, such as is the case here, the owner's title to the bed of the navigable water is qualified and subject to the public right of navigation. *See Klingeisen*, 163 Wis. 2d at 932; *see also Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 78 (explaining that although the public trust doctrine recognizes that the beds underlying streams are privately owned, such ownership is merely "a qualified title in stream beds" and that "[i]n reality, the state effectively controls the land under navigable streams and rivers without actually owning it."). "The public trust doctrine entails public rights in navigable waters, including non-commercial 'sailing, rowing, canoeing, bathing, fishing, hunting, skating, and other public purposes,' " including scenic beauty. *Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 87 (citation omitted).

¶ 25. The Lobermeiers readily concede—as they must—that the public trust doctrine applies to the Flowage. They consequently also concede that the Movriches may use the Flowage's waters in accordance with the public trust doctrine. Nevertheless, they assert the Movriches may not access the Flowage from their property—in other words, the Movriches cannot step from their property into the water, they cannot cast a fishing line from their property into the water, etc.—but rather that they may only access the water from a public access point. According to the Lobermeiers, this is so because in accessing the water from their property, the Movriches trespass on the Lobermeiers' property. As we explain, the Lobermeiers' position is untenable.

¶ 26. In support of their position, the Lobermeiers cite to cases primarily involving private and/or nonnavigable bodies of water with a privately owned waterbed. In particular, the Lobermeiers rely heavily on *Mayer*, in which our supreme court considered whether the owner of upland property directly adjacent to a privately owned artificial lake had riparian rights allowing for access to and use of the lake, *see id.*, 29 Wis. 2d at 178–79, for the proposition that ownership of land directly adjacent to a body of water does not confer riparian rights. That case, however, is readily distinguishable.

¶ 27. In *Mayer*, the lake at issue was formed as the result of gravel excavations on private property. *Id.* at 170. Mayer eventually purchased the land upon which the lake sat, and Grueber purchased property adjacent to the lake. *Id.* at 171–72. Mayer insisted he owned the lake and that mere ownership of the adjacent land did not entitle Grueber to use or access the water. *Id.* at 173. Although Grueber admitted the land

743

beneath the lake had been conveyed to Mayer, he argued that by virtue of owning shoreline property adjacent to the lake, he was a riparian owner and therefore entitled to use the water. *Id.* The court disagreed, and after acknowledging Grueber's concession that he did not have any ownership rights in the lake bed, it stated that Grueber "has no other rights in the waters over the bed of the lake unless he acquired those rights by prescription or adverse possession." *Id.* at 174–76. The court went on to conclude that:

> [T]he purchaser of property abutting an artificial lake acquires no rights as a riparian owner by virtue of the land acquisition alone. Unless the vendor conveys the right to use the lake, the purchaser is precluded from either the right of access or use.
>
> The right to use an artificial lake as well as the right to the bed of the lake are incidents of ownership that are vested exclusively in the owner of the fee upon which the lake is located . . . . The sale of abutting or contiguous property is a sale of the land alone . . . . Grueber could assert no rights beyond his property line—the shore of the artificial lake.

*Id.* at 179.

¶ 28. The Lobermeiers consider *Mayer* as being "a situation much like the present one." It is not. Unlike in *Mayer*, where the lake was a privately owned lake entirely within the boundaries of Mayer's property, *see id.* at 172, 176–77, the privately owned waterbed at issue here is a small area of the Flowage waterbed that is *not* entirely within the Lobermeiers' property. Moreover, the Flowage is a public body of water, whereas the lake at issue in *Mayer* was a private lake. Thus, to the extent the supreme court recognized in *Mayer* that "[i]n the case of artificial bodies of water, all of the incidents of ownership are

vested in the owner of the land," *see id.* at 176, and that Grueber therefore did not obtain riparian rights by virtue of owning adjacent property, it did so in the context of an artificial lake entirely within the boundaries of privately owned property. *See id.* at 176–79.

¶ 29. Likewise, in *Haase v. Kingston Cooperative Creamery Ass'n*, 212 Wis. 585, 250 N.W. 444 (1933), another case the Lobermeiers rely on in support of their position, the owner in fee owned *all* of the lands overflowed by the damming of a nonnavigable stream. *See id.* at 586.[9] Because the waters in *Haase* were entirely within one individual's land, riparian rights were not in dispute.

¶ 30. To the extent the Lobermeiers repeatedly cite to cases such as *Mayer* and *Haase* for the proposition that a riparian landowner does not obtain riparian rights simply by virtue of owning land directly adjacent to a body of water where the waterbed is privately owned, they simply ignore the factual differences between those cases and this matter. Unlike the Lobermeiers, we cannot ignore these distinctions and conclude that cases such as *Mayer* and *Haase* are not determinative as to whether the Movriches have riparian rights by virtue of owning property directly adjacent to the Flowage or whether the public trust doctrine allows them to access the Flowage and erect, maintain, and install a dock extending from their property into the Flowage.

¶ 31. As the Lobermeiers admit, the Movriches have all of the rights granted by the public trust doctrine as it relates to use of the Flowage. However, the Lobermeiers nevertheless seem to lose sight of the

[9] The resulting pond, however, was "concededly capable of navigation." *Haase v. Kingston Coop. Creamery Ass'n*, Wis. 2d 585, 586, 250 N.W. 444 (1933).

long-established principle that the public trust doctrine is to be interpreted broadly, *see Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 72, and that the Movriches are both riparian property owners *and* members of the public. As we explain, because the Movriches are members of the public who also happen to be riparian property owners, the public trust doctrine grants them the right to access the Flowage directly from their property and the right to erect, maintain, and use a pier or dock extending from their property into the Flowage.

¶ 32. First, it is undisputed that the Flowage owes its existence to a dammed navigable river—Sailor Creek. Accordingly, the Lobermeiers' ownership of the Flowage waterbed is analogous to private ownership of lands under a stream. As previously explained, although ownership of a stream bed is privately held, the State "effectively controls the land under navigable streams and rivers without actually owning it." *See Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 78. Thus, to the extent the Lobermeiers have property interests in their waterbed property, those interests are subordinate to the public's right to use the water and waterbed pursuant to the public trust doctrine.

¶ 33. Next, to conclude that the public trust doctrine does not grant the Movriches authority to step from their property into the Flowage—or to cast a fishing line from their property into the water or to launch a boat from their property—would fail to properly recognize " 'the broad and beneficent spirit' " of the public trust doctrine. *See id.*, ¶ 72 (citation omitted). To the contrary, to reach such a conclusion would elevate the Lobermeiers' property interests in the waterbed over the rights granted the public under the public trust doctrine. This we cannot do. *See*

*Klingeisen*, 163 Wis. 2d at 932 (private ownership of waterbed is subject to rights of the public under the public trust doctrine). We likewise cannot lose sight of the principle that we must broadly interpret the public trust doctrine in a manner that allows the public to *fully* enjoy its benefits. *See Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 72. To conclude that the Movriches cannot access the Flowage from their waterfront property would prevent members of the public—specifically, the Movriches—from fully enjoying the rights the public trust doctrine grants, such as navigation, recreation, boating, fishing, swimming, etc., particularly given that their property abuts the Flowage's public and navigable waters.

¶ 34. Finally, docks and piers typically aid in navigation. *See Town of East Troy v. Flynn*, 169 Wis. 2d 330, 339, 485 N.W.2d 415 (Ct. App. 1992) ("[a] riparian owner has the right to build wharves and piers in aid of navigation"). Accordingly, a dock enhances use and appreciation of the navigational and recreational activities the public trust doctrine promotes, such as allowing increased opportunities for fishing without need of a boat, for access to water for swimming, and for enjoying the scenic beauty of one's waterfront surroundings. In other words, under these circumstances, erecting, maintaining, and using a dock or pier extending from one's riparian property is simply a natural extension of the navigational and recreational activities the public is entitled to pursue under the public trust doctrine.

¶ 35. In summary, it is without question that riparian and property rights are subordinate to the public trust doctrine. By virtue of their riparian property ownership, the Movriches—members of the public —simply have more immediate access to the Flowage

under the public trust doctrine than does the general public. This does not mean that the Movriches obtain greater benefits under the public trust doctrine than the general public, and it likewise does not transfer the Lobermeiers' interests in the waterbed property to the Movriches. Rather, it simply means that based on the present facts, the Movriches, by virtue of owning riparian property, may directly access the Flowage and may erect, maintain, and use a pier or dock extending from their property, as set forth in the trial court's judgment, as doing so will allow them to fully enjoy the Flowage as the public trust doctrine mandates. *See Rock-Koshkonong*, 350 Wis. 2d 45, ¶ 72.

### III. We do not address the Lobermeiers' additional requests on appeal because their arguments are undeveloped.

¶ 36. The Lobermeiers also challenge the trial court's order prohibiting the Lobermeiers from coming upon the Movriches property and interfering with the Movriches rights, and they additionally request that we reverse the trial court's order that costs and fees be taxed against them. The Lobermeiers, however, have done little more than assert these requests—in fact, they offer no argument, legal or otherwise, in support whatsoever—and we therefore will not address them. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we do not address undeveloped arguments that are not supported by legal authority, and we will not develop the Lobermeiers' arguments for them).

*By the Court.*—Judgment affirmed.